Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jessica C. Covington (SBN 301816)
jcovington@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:  (310) 546-7400
Facsimile:  (310) 546-7401

*Attorneys for Defendants/Counterclaimants*
*Affliction Holdings, LLC*
*and Xtreme Couture, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RCRV, INC., d/b/a ROCK REVIVAL, a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>AFFLICTION HOLDINGS, LLC, a California Limited Liability Company; XTREME COUTURE, INC., a California Corporation; XYZ COMPANIES 1-10, and JOHN AND JANE DOES 1-10,<br><br>Defendants.<br><br><hr>[RELATED COUNTERCLAIMS] | CASE NO. 2:16-cv-03582-ODW (Ex)<br><br>**JOINT STIPULATION RE: DEFENDANTS AFFLICTION HOLDINGS, LLC AND XTREME COUTURE, INC.'S MOTION TO COMPEL PLAINTIFF RCRV'S RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND RESPONSES TO FIRST SET OF INTERROGATORIES**<br><br>[DISCOVERY MATTER]<br><br>HEARING:<br><br>Date:        Friday, June 9, 2017<br>Time:        9:30 a.m.<br>Courtroom:  20 – 3rd Floor<br><br>**Hon. Charles F. Eick**<br><br>Discovery Cut-Off:        6/19/2017<br>Pre-Trial Conference:  8/28/2017<br>Trial Date:                    9/19/2017 |

1

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **Friday, June 9, 2017** at **9:30 a.m.**, in Courtroom 20 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Affliction Holdings, LLC and Xtreme Couture, Inc. (collectively "Defendants") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 37 and Local Civil Rule 37-2, for an Order requiring Plaintiff RCRV, Inc. d/b/a Rock Revival ("Plaintiff" or "RCRV") to produce further responses and documents responsive to Defendants' **Request for Production Nos. 18, 41, 42, 44, 45** and **54**, and further responses to Defendants' **Special Interrogatory Nos. 2, 6, 18** and **20**. To the extent there are no responsive documents, Plaintiff should be ordered to supplement its responses to state that a diligent search and reasonable inquiry has been conducted and that no documents are being withheld pursuant to its unsubstantiated objections.

This Motion is made following the conference of counsel pursuant to L.R. 37-1, which took place on March 3, 2017.

The Motion will be based on this Notice, the Joint Stipulation prepared by the parties pursuant to L.R. 37-2 as well as any supporting declarations and exhibits, the files and records in this action, and any further evidence or argument that this Court may properly receive at or before the hearing.

DATED:      May 16, 2017            BLAKELY LAW GROUP


                                    By:   /s/ Jessica C. Covington
                                          Brent H. Blakely
                                          Jessica C. Covington
                                          *Attorneys for Defendants/*
                                          *Counterclaimants*
                                          *Affliction Holdings, LLC*
                                          *and Xtreme Couture, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      DEFENDANTS' PRELIMINARY STATEMENT ................................2

II.     RCRV'S PRELIMINARY STATEMENT ..............................................5

III.    SURVEYS AND OTHER MARKET RESEARCH RE RCRV'S
        INVERTED FLEUR-DE-LIS (REQUEST NOS. 18 AND 54)...............6

IV.     RCRV'S KNOWLEDGE OF PRIOR USE OF THE INVERTED
        FLEUR-DE-LIS BY LAGUNA BEACH JEAN CO. (REQUEST
        NOS. 41, 42 AND INTERROGATORIES NOS. 18, 20) ......................18

V.      DOCUMENTS RELATED TO THE *GRACING* ACTION AND
        RCRV'S ATTEMPTS TO SUPPRESS THE *GRACING* SURVEY
        (REQUEST NO. 44) ........................................................................32

VI.     DISCOVERY REGARDING THE VALIDITY,
        ENFORCEABILITY, DISTINCTIVENESS OF THE INVERTED
        FLEUR-DE-LIS MARK IN RELATED ACTIONS (REQUESTS
        NOS. 45 AND 46).............................................................................39

VII.    FACTS AND CIRCUMSTANCES SURROUNDING RCRV'S
        FIRST USE OF THE INVERTED FLEUR-DE-LIS MARK
        (INTERROGATORY NO. 2)...............................................................48

VIII.   FACTS SUPPORTING RCRV'S CONTENTIONS THAT
        INVERTED FLEUR-DE-LIS HAS ACHIEVED SECONDARY
        MEANING (INTERROGATORY NO. 6) .............................................51

IX.     RCRV'S FAILURE TO PROVIDE VERIFIED RESPONSES ..............55

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**JOINT STIPULATION [L.R. 37-2]**</u>

Pursuant to Local Rule 37-2.1, Defendants Affliction Holdings, LLC ("Affliction") and Xtreme Couture, Inc. ("Xtreme Couture") (collectively "Defendants") and Plaintiff RCRV, Inc. ("Plaintiff" or "RCRV") submit the following joint stipulation in connection with Defendants' present motion.

**I.     DEFENDANTS' PRELIMINARY STATEMENT**

In recent years, RCRV has habitually filed a series of dubious lawsuits claiming infringement of purported rights in an inverted fleur-de-lis mark; essentially attempting to monopolize the use of any fleur-de-lis on jeanswear.  While litigating these actions, it now appears that RCRV has exhibited a pattern of disregarding its discovery and ethical obligations, choosing instead to suppress and/or attempt to destroy evidence that undermines its assertion that its inverted fleur-de-lis mark is a valid and protectable trademark.

In the present matter, RCRV has wasted the Parties'—and now most importantly this Court's— time by initially providing responses to written discovery that are nothing short of evasive.  These responses included meritless, boilerplate objections, improper and evasive responses, and refusals to produce documents and information that are highly relevant to this case.  (Declaration of Jessica C. Covington ("Covington Dec."), ¶ 5)  Primary among RCRV's obfuscation are (1) surveys, consumer polls, focus groups, or any other market research concerning RCRV's inverted fleur-de-lis mark and RCRV's attempts to suppress such surveys, (2) evidence that Steve Kim of Laguna Beach Jean Co. ("LBJC") had been using his own inverted fleur-de-lis mark prior to RCRV's use, and RCRV lied in its application to the United States Patent and Trademark Office ("USPTO") regarding this use in order to obtain a registration of the inverted fleur-de-lis mark, which the USPTO has previously determined was ornamental, (3) discovery regarding the validity of the inverted fleur-de-lis mark in related actions, (4) RCRV's account of its first use of the inverted fleur-de-lis mark,

1   and (5) RCRV's contention that the inverted fleur-de-lis has acquired secondary

2   meaning.

3          With regard to the surveys, RCRV and its counsel objected to requests seeking

4   any surveys relating to the inverted fleur-de-lis mark, and when questioned during a

5   meet and confer, denied knowledge of the existence of any responsive documents.

6   (Covington Dec., ¶ 9)  Only when Defendants learned from third parties that RCRV

7   and its counsel had actively tried to conceal and destroy a survey conducted by the

8   defendant in the matter, RCRV, Inc. v. Gracing, Inc. et al.; Case No.: 2:16-cv-02829-R

9   (AFMx) ("Gracing Survey") (which concluded that only 3% of consumers associated

10  RCRV's inverted fleur-de-lis mark with RCRV (7% thought it was True Religion) i.e.,

11  the mark has no secondary meaning), and threatened to file an ex parte application

12  with the Court regarding RCRV's spoliation of evidence, did Plaintiff's counsel finally

13  admit to the existence of the Gracing Survey.  (Covington Dec., ¶¶ 11-12)  While

14  RCRV has since supplemented its responses to Defendants' Requests for Production

15  ("RFPs"), RCRV continues to assert an objection/qualification that it is only producing

16  non-privileged documents, indicating that privileged responsive documents do indeed

17  exist.  However, in its privilege log, the only documents identified by Plaintiff are

18  communications between its general counsel and Arnold & Porter.  Given Plaintiff's

19  history, it is reasonable to conclude that that this suppression of evidence is not an

20  isolated incident and Plaintiff, by asserting this objection, is concealing the existence

21  of other surveys.

22          Likewise, RCRV continues to object to requests seeking documents and

23  responses relating to RCRV's knowledge of Steve Kim's prior use of an inverted fleur-

24  de-lis mark.  When initially filed, the USPTO denied RCRV's trademark application

25  for the inverted fleur-de-lis mark on the basis of it being ornamental.  (Covington Dec.,

26  ¶ 17, Ex. 14)  To overcome this rejection, in November 2011 Lilly Kim, former

27  General Counsel and Executive Vice President of RCRV, filed a declaration stating ,

28  among other things, that:  (1) the RCRV inverted fleur-de-lis is a new and unique

design, and (2) since its first use in 2006 RCRV inverted fleur-de-lis has gained secondary meaning due to its exclusive and continuous use.  (Covington Dec., ¶ 17, Ex. 15)  Neither of these statements were true at the time they were made, as RCRV essentially acknowledged when after having sued Steve Kim, RCRV paid Mr. Kim $295,000 for Kim's superior rights in the inverted fleur-de-lis mark.  (Covington Dec., ¶ 18)

For years, RCRV and its counsel at Arnold & Porter Kaye Scholar LLP perpetuated a host of lawsuits against other entities wherein RCRV attempted to enforce intellectual property rights it did not own.  In each of these cases, RCRV has concealed the fact that the marks it attempted to enforce were actually owned by Steve Kim/ LBJC. In order to whitewash their fraud on the various courts, RCRV was compelled to settle with Kim/LBJC.

As can be expected, Affliction has filed a counterclaim for the cancellation of RCRV's inverted fleur-de-lis mark on the basis of fraud on the USPTO.  While RCRV may have obtained Mr. Kim's rights to his inverted fleur-de-lis mark, this transfer did not retroactively make Lilly Kim's false statements about RCRV's use of this mark in 2011 true.  Clearly, discovery relating to the veracity of Lilly Kim's statements are directly relevant to Defendants' counterclaim that RCRV committed fraud on the USPTO when it obtained the registration for its inverted fleur-de-lis mark.

Today, this Court must remind RCRV and its counsel of their discovery obligations, and the repercussions should they choose to continue to ignore same.  If this Court allows RCRV to maintain these grossly unethical practices, then every alleged infringer of the inverted fleur-de-lis faces an unfair disadvantage in defending its case, as RCRV will continue to game the discovery process and judicial system and conceal any evidence that effectively refutes its claims related to the mark at issue.

Based on the foregoing, Defendants respectfully request that this Court issue an Order compelling RCRV to produce supplemental responses and documents responsive to Defendants' **RFP Nos. 18, 41, 42, 44, 45** and **54**, and further responses

to Defendants' **Special Interrogatory** ("Interrogatory") **Nos. 2, 6, 7, 8, 18** and **20**. The aforementioned discovery requests seek relevant information and RCRV's objections are unsubstantiated.

## II.   <u>RCRV'S PRELIMINARY STATEMENT</u>

In an entirely unsupported effort to deflect this Court's attention from its own clients' infringement of RCRV's federally-registered INVERTED FLEUR-DE-LIS DESIGN Trademark, and their extensive discovery deficiencies, Defendants' counsel, Blakely Law Group, has attempted in this motion to introduce two complete red herrings.

First, Defendants' counsel has accused RCRV and its counsel of attempting to "suppress and destroy" evidence that, it contends, may undermine RCRV's claims. Defendants' counsel makes this outrageous accusation without any evidentiary basis whatsoever; indeed, it is well aware that the opposite is the case.  In particular, Blakely Law Group has deliberately ignored repeated statements by RCRV and its counsel that all surveys and/or expert reports presented in trademark infringement litigations engaged in by RCRV have been produced in discovery this action two months ago. Indeed, even though RCRV and its counsel have undertaken—in this instance with evidentiary support—that no such surveys or reports exist, other than a single report presented in one other such action (which report Blakely Law Group had already surreptitiously obtained), Blakely Law Group continues to persist and accuse RCRV and its counsel, to this day, of "willfully order[ing] the destruction of and suppression of [that report] as part of the settlement" of that other litigation (Covington Decl. Ex. 8), and, more generally, of suppressing or spoliating evidence with respect to other such surveys and reports, none of which have ever existed.  This conduct on Defendants' counsel's part is unconscionable, and cannot be allowed to continue.

Second, Blakely Law Group has introduced into this case, from its own law firm files, confidential documents that were produced by another of its clients in an unrelated, long-settled infringement action involving the same RCRV trademark—

1    apparently without obtaining the permission of those clients, and potentially in

2    violation of the settlement agreement in that action.  Such documents, according to

3    Blakely Law Group, suggest that RCRV does not own the trademark rights it claims to

4    own.  However, as Blakely Law Group well knows, RCRV settled that prior action by

5    acquiring its clients' allegedly superior trademark rights, specifically so that firms like

6    Blakely Law Group could not continue to assert such baseless defenses to RCRV's

7    infringement claims in the future.

8         Yet, not surprisingly, Blakely Law Group continues to make such assertions in

9    this action, once again in signed pleadings without any evidentiary basis, and to accuse

10   RCRV's counsel of things like "whitewash[ing] their fraud on the various courts,"

11   "maintain[ing] [] grossly unethical practices," and "gam[ing] the discovery process."

12   In fact, the opposite is the case—as shown below, while RCRV has fulfilled its

13   discovery obligations (and then some), Defendants have failed miserably to adhere to

14   their obligations.

15        Accordingly, before making any more unsubstantiated allegations of this nature,

16   Blakely Law Group should first take stock of its own house.  In the meantime, its

17   baseless and factually unsupported contentions should be rejected out of hand, and

18   RCRV should be awarded its attorneys' fees and costs for having to respond to such

19   totally unsupported nonsense.

20   **III.   SURVEYS AND OTHER MARKET RESEARCH RE RCRV'S**

21   **INVERTED FLEUR-DE-LIS (REQUEST NOS. 18 and 54)**

22        **DEFENDANTS' REQUEST NO. 18:**

23        All consumer surveys, focus group, polls or any other
     samples of market research or consumer attitudes conducted
24   by YOU, on behalf of YOU or known to YOU, including any
     results thereof, concerning the RCRV FLEUR-DE-LIS.
25

26        **RCRV'S RESPONSE TO REQUEST NO. 18:**

27        **OBJECTION:**
     RCRV incorporates by reference the above-stated General
28   Objections as if fully set forth herein. RCRV further objects
     to this Request on the basis that the phrase "samples of

6

market research or consumer attitudes" is vague and ambiguous as used therein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll consumer surveys, focus groups, polls or any other samples of market research or consumer attitudes" that are "known to" RCRV relating to the INVERTED FLEUR-DE-LIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV further objects to this Request on the basis that it calls for the disclosure of proprietary, trade secret or other commercially protected information, without the protection of an appropriate protective order.

## RCRV'S SUPPLEMENTAL RESPONSE TO REQUEST NO. 18:

**OBJECTION:**
RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the basis that the phrase "samples of market research or consumer attitudes" is vague and ambiguous as used therein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll consumer surveys, focus groups, polls or any other samples of market research or consumer attitudes" that are "known to" RCRV relating to the INVERTED FLEUR-DE-LIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**RESPONSE:**
Subject to and without waiving the foregoing objections, RCRV states that it will produce relevant, responsive, non-privileged documents within its possession, custody, or control that were located following a reasonably diligent search and inquiry.

7

1  **DEFENDANTS' CONTENTIONS RE REQUEST NOS. 18:**

2       The party seeking to compel discovery bears "the initial burden of establishing

3  that its request" is relevant.  [Ellis v. J.P. Morgan Chase & Co., 2014 U.S. Dist. LEXIS

4  45681 at *3 (N.D. Cal. Apr. 1, 2014); In re Facebook Privacy Litig., 2015 U.S. Dist.

5  LEXIS 75962, at *3 (N.D. Cal. June 11, 2015)]  There is no question that surveys are

6  often used in trademark cases in connection with issues such as secondary meaning

7  and likelihood of confusion. [Chrysler Corp. v. Vanzant, 44 F. Supp. 2d 1062, 1077

8  (C.D. Cal. 1999); Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1359 (9th Cir.

9  1985)]  Indeed, RCRV's inverted fleur-de-lis is not incontestable, and thus, RCRV will

10 have to establish that the mark has secondary meaning, and any surveys or polls

11 regarding secondary meaning, or lack thereof, of the Inverted Fleur-de-Lis would be

12 directly relevant to the claims asserted in this case.

13      Yet, during the initial L.R. 37-1 meeting regarding this Request, RCRV's

14 counsel, the same counsel who has represented RCRV in at least twenty-five other

15 actions wherein rights to the same mark are asserted, could not definitively say

16 whether or not any surveys regarding secondary meaning of the marks had been

17 conducted.  (Covington Dec., ¶¶ 8, 9)  Indeed, it was only *after* Defendants' counsel

18 revealed their knowledge about the existence of a survey that was conducted by

19 defendant's counsel in RCRV, Inc. v. Gracing, Inc. et al.; Case No.: 2:16-cv-02829-R

20 (AFMx) did RCRV's counsel acknowledge the existence of and agree to produce

21 same.  (Covington Dec., ¶ 12, Ex. 10) Had Defendants not essentially called RCRV

22 out, it is unlikely that RCRV or its current counsel was ever going to produce

23 documents, or even so much as disclose, the *Gracing* Survey.

24      Additionally, 15 U.S.C. §1117(a) provides for attorneys fees in exceptional

25 cases. Baseless claims for trademark infringement and unfair competition, combined

26 with presentation of evidence that is insufficient and lacking credibility can result in an

27 award of attorney fees. [IMAF, S.p.A. v J.C. Penney Co., 810 F. Supp. 96, 100

28 (S.D.N.Y. 1992)]  In the likely event that Defendants prevail in this case, RCRV's

1  prosecution of this case after being provided with the *Gracing* Survey, as well as
2  RCRV's attempt to conceal that survey, will weigh in favor of awarding attorneys fees
3  to Affliction.

4          Once the moving party has demonstrated that a discovery request is relevant, the
5  burden shifts to the opposing party to show that the discovery should not be allowed.
6  [O'Connell v. Chapman Univ., 245 F.R.D. 646, 649 (C.D. Cal. 2007); In re Facebook
7  Privacy Litig., 2015 U.S. Dist. LEXIS 75962, at *3 n.6 (N.D. Cal. June 11, 2015)]
8  General or boilerplate objections—specifically that discovery requests are "overly
9  broad, burdensome, oppressive and irrelevant"—are insufficient to meet this burden.
10 [Id.]  RCRV has not presented any explanation as to how the information sought in the
11 Request is in any way disproportionate to the needs of the case.

12         To date, the *Gracing* Survey is the only document that RCRV has produced in
13 response to this Request.  However, RCRV in its written responses has neither
14 confirmed nor denied the existence of other surveys.  Indeed, it is reasonable to
15 conclude that where RCRV had initially attempted to conceal the *Gracing* Survey, it
16 would likely attempt to conceal other damaging surveys. While RCRV indicates in its
17 response that it will produce all "*non-privileged*" documents relating to surveys in
18 connection with the inverted fleur-de-lis, there are actually no documents identified in
19 its privilege log that relate to any surveys or other documents otherwise responsive to
20 this Request.  (Covington Dec., ¶ 14)

21         To the extent that additional documents that are responsive to this Request do
22 indeed exist, Plaintiff's privilege as to such documents should be deemed waived.
23 Pursuant to Fed.R.Civ.P. 26(b)(5), when a party withholds information otherwise
24 discoverable by claiming that the information is privileged or subject to protection as
25 trial-preparation material, the party must (1) expressly make the claim; (2) and
26 describe the nature of the documents, communications, or tangible things not produced
27 or disclosed—and do so in a manner that, without revealing information itself
28 privileged or protected, will enable other parties to assess the claim.

1   Boilerplate objections or blanket refusals inserted into a response to a Rule 34

2   request for production of documents are insufficient to assert a privilege. [Burlington

3   Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142,

4   1149 (9th Cir. 2005)]  Failure to produce a privilege log does not automatically waive

5   the privilege, but the court does have discretion to reject the claim where no log or an

6   insufficient privilege log is provided.  [Burlington, 408 F.3d at 1148; United States v.

7   Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996); see United

8   States v. British American Tobacco (Investments) Ltd., 387 F.3d 884, 890-91 (D.C.

9   Cir. 2004); Muro v. Target Corp., 243 F.R.D. 1142, 1148 (9th Cir. 2005)]

10   Using a 30-day period as a default guideline, a district court should make a case-

11   by-case determination on whether or not the claim of privilege is waived by taking into

12   account the following factors:

13   the degree to which the objection or assertion of privilege
14   enables the litigant seeking discovery and the court to
     evaluate whether each of the withheld documents is
15   privileged (where providing particulars typically contained in
     a privilege log is presumptively sufficient and boilerplate
16   objections are presumptively insufficient); the timeliness of
     the objection and accompanying information about the
17   withheld documents (where service within 30 days, as a
     default guideline, is sufficient); the magnitude of the
18   document production; and other particular circumstances of
     the litigation that make responding to discovery unusually
19   easy…or unusually hard. [Id. at 1149]

20   The first factor (degree to which assertion of privilege enables the litigant

21   seeking discovery and the court to evaluate whether the withheld documents are

22   privileged) favors a finding of waiver where the objections asserted in Plaintiff's

23   written responses provide no particulars as to the type of documents withheld, the

24   general subject matter thereof, or the recipients/authors of said documents.

25   The second factor likewise weighs towards a finding of waiver where it has been

26   two months since Plaintiff provided its supplemental responses to Defendants'

27   Requests for Production.  Defendants and the Court do not currently have enough

28   information to analyze the magnitude of document production because RCRV has not

10

provided information related to these purportedly privileged documents responsive to this Request.  Thus, Plaintiff should be deemed to have waived all of its assertions of privilege as to such documents, and all documents withheld on such basis must be produced henceforth.

Finally, as will be discussed in connection with Request No. 44, which seeks documents related to settlement, Plaintiff is likely suppressing communications with opposing counsel whereby it was discussed that the *Gracing* Survey be destroyed, held as confidential, and/or otherwise suppressed as a condition to the settlement agreement.   Plaintiff's evasive response is simply discovery abuse designed to conceal information damaging to RCRV's claims, bad faith in bringing those claims, and wrongdoing in connection with their attempts to suppress this evidence.

Accordingly, Defendants seek an order from this Court (a) compelling production of *all* documents, regardless of claims of privilege, responsive to this Request[1] and (b) to the extent no other documents exist, Defendants shall amend its response to state as such and explain its inability to comply as required by Fed.R.Civ.P. 34(b).

**RCRV'S CONTENTIONS RE REQUEST NO. 18:**

Two months ago, on March 17, 2017, RCRV produced the one and only "consumer survey[], focus group, poll[] or [] other sample[] of market research" (Defendants' RFP No. 18), including "expert reports" (Defendants' RFP No. 54), relating to its INVERTED FLEUR-DE-LIS DESIGN Trademark, that it has ever possessed or otherwise been aware of—*i.e.*, the October 2016 expert report Hal Poret prepared for the defendants in the *Gracing* Action (the "Poret Report).  Salzmann Decl. ¶54.

---

[1] Defendants are aware of the timelines governing initial expert disclosures in this action and do not seek reports and/or research conducted by any expert(s) retained by Plaintiff for the <u>present action</u> prior to the deadlines set by Fed. R. Civ. P. 26 and/or this Court's Scheduling Order.

1    A week earlier, on March 10, 2017, RCRV's counsel had responded to an

2 inquiry from Defendants' counsel requesting that RCRV "[i]dentify any and all

3 expert reports concerning the inverted fleur-de-lis mark" (Covington Decl. Ex. 9),

4 unequivocally "**confirm[ing] that RCRV does not possess, and has never possessed**

5 **any other such reports [besides the Poret Report] concerning its INVERTED**

6 **FLEUR-DE-LIS DESIGN trademark**" (Covington Decl. Ex. 10 (emphasis added)).

7 Salzmann Decl. ¶51.  Thereafter, by email dated March 13, 2017, Defendants'

8 counsel acknowledged receipt of that representation, stating that RCRV's counsel's

9 March 10, 2017 letter "clearly represents that you/RCRV is unaware of any other

10 surveys pertaining to the inverted fleur-de-lis mark."  Covington Decl. Ex. 11;

11 Salzmann Decl. ¶52.

12    Nevertheless, and despite (a) RCRV's production of the Poret Report, (b)

13 RCRV's counsel's written "confirm[ation] that RCRV does not possess, and has

14 never possessed any other such reports [besides the Poret Report] concerning its

15 INVERTED FLEUR-DE-LIS DESIGN trademark" (Covington Decl. Ex. 10), (c) Mr.

16 Blakely's confirmation of the same (Covington Decl. Ex. 11), (d) RCRV's

17 Supplemental Responses to RFP Nos. 18 and 54 (Covington Decl. Ex. 12), and (e)

18 after hearing nothing further from Defendants on this issue for **nearly two months**,

19 Defendants now disingenuously represent to this Court that RCRV "**has neither**

20 **confirmed or [sic] denied the existence of other surveys**."  For all of the foregoing

21 reasons, that statement is demonstrably (and, apparently, deliberately) false.

22 Salzmann Decl. ¶55.

23    Thereafter, in yet another attempt to put an end to Defendants' counsel's

24 untethered allegations regarding RCRV's alleged broad—yet entirely

25 unsubstantiated—conspiracy to "suppress" the Poret Report, which was **produced to**

26 **the Blakely Law Group in this action two months ago**, and the alleged

27 "conceal[ment] [of] the existence of other surveys"—yet another salacious allegation

28 Defendants' counsel keeps recklessly asserting absent any evidentiary support—on

1   May 11, 2017, RCRV served its Second Supplemental Objections and Responses to

2   Defendants' First Set of Requests for Production of Documents and Things [Nos. 18

3   & 54] (the "Second Supplemental Responses").  Salzmann Decl. ¶60, Ex. J.

4          RCRV's Second Supplemental Response to Defendants' RFP No. 18 states, in

5   pertinent part:

6                  Subject to and without waiving the foregoing
            objections, RCRV states that *all* responsive documents
7           within its possession, custody, or control that were located
            following a reasonably diligent search and inquiry were
8           produced on March 17, 2017 (Bates No. RCRV004834–
            5472), and that ***no responsive documents have been***
9           ***withheld on the basis of any privilege or pursuant to the***
            ***work-product doctrine***.
10

11  Salzmann Decl. ¶61, Ex. J (emphasis added).

12         RCRV's Second Supplemental Response to Defendants' RFP No. 54 states, in

13  pertinent part:

14                 Subject to and without waiving the foregoing
            objections, RCRV states that *all* responsive documents
15          within its possession, custody, or control that were located
            following a reasonably diligent search and inquiry were
16          produced on March 17, 2017 (Bates No. RCRV004834–
            5472), and that ***no responsive documents have been***
17          ***withheld on the basis of any privilege or pursuant to the***
            ***work-product doctrine***.  For avoidance of doubt, RCRV
18          hereby reaffirms the statement made in Louis S. Ederer's
            March 10, 2017 letter to Brent H. Blakely: "***RCRV does not***
19          ***possess, and has never possessed any other such reports***
            ***concerning its INVERTED FLEUR-DE-LIS DESIGN***
20          ***trademark***."

21

22  Salzmann Decl. ¶62, Ex. J (emphasis added).

23         Further, there is no foundational basis for Defendants' counsel's position that "it

24  is reasonable to conclude that where RCRV had initially attempted to conceal the

    Gracing Survey, it would likely attempt to conceal other damaging surveys."

25  Salzmann Decl. ¶63; *see, e.g.*, ¶¶40-64.  First, neither RCRV nor its counsel has

26  attempted to conceal anything, and, second, to the extent there was any doubt as to the

27  existence of other surveys or expert reports relating to RCRV's INVERTED FLEUR-

28

DE-LIS DEIGN Trademark (of which there are none), RCRV's counsel put that issue to rest in its March 10, 2017 letter to Defendants' counsel.  Covington Decl. Ex. 10. Further, RCRV has now formally reconfirmed the same in its Supplemental Responses.  Salzmann Decl. ¶¶60-63, Ex. J.  Accordingly, Defendants' counsel should be directed to refrain from accusing RCRV's counsel of ethical and discovery violations, when the only counsel in this action which has made any factual contentions without evidentiary support is Defendants' counsel, Blakely Law Group.

As it is well established that RCRV cannot be compelled "to produce what does not exist," Defendants' request for any relief with respect to RFP Nos. 18 and 54 must be denied.  *See Williams v. Gyrus ACMI, LP*, 2016 WL 7013042, at *1 (N.D. Cal. Dec. 1, 2016).

### DEFENDANTS' REQUEST NO. 54:

All expert reports that YOU received and/or produced during any dispute, litigation, case, and/or action that YOU have had with any PERSON REGARDING or RELATED TO the RCRV FLEUR-DE-LIS.

### RCRV'S RESPONSE TO REQUEST NO. 54:

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks lain expert reports" received and/or produced by RCRV relating to the INVERTED FLEUR-DE-LIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

### RCRV'S SUPPLEMENTAL TO REQUEST NO. 54:

### OBJECTION:

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll expert reports" received and/or produced by RCRV relating to the INVERTED FLEUR-DE-LIS DESIGN

Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**RESPONSE**:
Subject to and without waiving the foregoing objections, RCRV states that it will produce relevant, responsive, non-privileged documents within its possession, custody, or control that were located following a reasonably diligent search and inquiry.

## DEFENDANTS' CONTENTIONS RE REQUEST NO. 54:

Defendants reincorporate by reference the statements and arguments set forth in its contentions with respect to Request No. 18 above as though fully set forth herein. Based on the forgoing, Defendants seek an order from this Court (a) compelling production of *all* documents, regardless of claims of privilege, responsive to this Request[2] and (b) to the extent no other documents exist, Defendants shall amend its response to state as such and explain its inability to comply as required by Fed.R.Civ.P. 34(b).

## RCRV'S CONTENTIONS RE REQUEST NO. 54:

Two months ago, on March 17, 2017, RCRV produced the one and only "consumer survey[], focus group, poll[] or [] other sample[] of market research" (Defendants' RFP No. 18), including "expert reports" (Defendants' RFP No. 54), relating to its INVERTED FLEUR-DE-LIS DESIGN Trademark, that it has ever possessed or otherwise been aware of—*i.e.*, the October 2016 expert report Hal Poret

---

[2] Defendants are aware of the timelines governing initial expert disclosures in this action and do not seek reports and/or research conducted by any expert(s) retained by Plaintiff for the <u>present action</u> prior to the deadlines set by Fed. R. Civ. P. 26 and/or this Court's Scheduling Order.

1  prepared for the defendants in the *Gracing* Action (the "Poret Report).  Salzmann

2  Decl. ¶54.

3      A week earlier, on March 10, 2017, RCRV's counsel had responded to an

4  inquiry from Defendants' counsel requesting that RCRV "[i]dentify any and all

5  expert reports concerning the inverted fleur-de-lis mark" (Covington Decl. Ex. 9),

6  unequivocally "***confirm[ing] that RCRV does not possess, and has never possessed***

7  ***any other such reports [besides the Poret Report] concerning its INVERTED***

8  ***FLEUR-DE-LIS DESIGN trademark***" (Covington Decl. Ex. 10 (emphasis added)).

9  Salzmann Decl. ¶51.  Thereafter, by email dated March 13, 2017, Defendants'

10  counsel acknowledged receipt of that representation, stating that RCRV's counsel's

11  March 10, 2017 letter "clearly represents that you/RCRV is unaware of any other

12  surveys pertaining to the inverted fleur-de-lis mark."  Covington Decl. Ex. 11;

13  Salzmann Decl. ¶52.

14      Nevertheless, and despite (a) RCRV's production of the Poret Report, (b)

15  RCRV's counsel's written "confirm[ation] that RCRV does not possess, and has

16  never possessed any other such reports [besides the Poret Report] concerning its

17  INVERTED FLEUR-DE-LIS DESIGN trademark" (Covington Decl. Ex. 10), (c) Mr.

18  Blakely's confirmation of the same (Covington Decl. Ex. 11), (d) RCRV's

19  Supplemental Responses to RFP Nos. 18 and 54 (Covington Decl. Ex. 12), and (e)

20  after hearing nothing further from Defendants on this issue for ***nearly two months***,

21  Defendants now disingenuously represent to this Court that RCRV "***has neither***

22  ***confirmed or [sic] denied the existence of other surveys***."  For all of the foregoing

23  reasons, that statement is demonstrably (and, apparently, deliberately) false.

24  Salzmann Decl. ¶55.

25      Thereafter, in yet another attempt to put an end to Defendants' counsel's

26  untethered allegations regarding RCRV's alleged broad—yet entirely

27  unsubstantiated—conspiracy to "suppress" the Poret Report, which was ***produced to***

28  ***the Blakely Law Group in this action two months ago***, and the alleged

1  "conceal[ment] [of] the existence of other surveys"—yet another salacious allegation

2  Defendants' counsel keeps recklessly asserting absent any evidentiary support—on

3  May 11, 2017, RCRV served its Second Supplemental Objections and Responses to

4  Defendants' First Set of Requests for Production of Documents and Things [Nos. 18

5  & 54] (the "Second Supplemental Responses").  Salzmann Decl. ¶60, Ex. J.

6       RCRV's Second Supplemental Response to Defendants' RFP No. 18 states, in

7  pertinent part:

8          Subject to and without waiving the foregoing

9      objections, RCRV states that **all** responsive documents
    within its possession, custody, or control that were located

10      following a reasonably diligent search and inquiry were
    produced on March 17, 2017 (Bates No. RCRV004834–

11      5472), and that **no responsive documents have been
    withheld on the basis of any privilege or pursuant to the**

12      **work-product doctrine**.

13  Salzmann Decl. ¶61, Ex. J (emphasis added).

14       RCRV's Second Supplemental Response to Defendants' RFP No. 54 states, in

15  pertinent part:

16          Subject to and without waiving the foregoing

17      objections, RCRV states that **all** responsive documents
    within its possession, custody, or control that were located

18      following a reasonably diligent search and inquiry were
    produced on March 17, 2017 (Bates No. RCRV004834–

19      5472), and that **no responsive documents have been
    withheld on the basis of any privilege or pursuant to the**

20      **work-product doctrine**.  For avoidance of doubt, RCRV
    hereby reaffirms the statement made in Louis S. Ederer's

21      March 10, 2017 letter to Brent H. Blakely: "***RCRV does not
    possess, and has never possessed any other such reports***

22      ***concerning its INVERTED FLEUR-DE-LIS DESIGN
    trademark***."

23

24  Salzmann Decl. ¶62, Ex. J (emphasis added).

25       Further, there is no foundational basis for Defendants' counsel's position that "it

26  is reasonable to conclude that where RCRV had initially attempted to conceal the

27  Gracing Survey, it would likely attempt to conceal other damaging surveys."

28  Salzmann Decl. ¶63; *see, e.g.*, ¶¶40-64.  First, neither RCRV nor its counsel has

attempted to conceal anything, and, second, to the extent there was any doubt as to the existence of other surveys or expert reports relating to RCRV's INVERTED FLEUR-DE-LIS DEIGN Trademark (of which there are none), RCRV's counsel put that issue to rest in its March 10, 2017 letter to Defendants' counsel.  Covington Decl. Ex. 10. Further, RCRV has now formally reconfirmed the same in its Supplemental Responses.  Salzmann Decl. ¶¶60-63, Ex. J.  Accordingly, Defendants' counsel should be directed to refrain from accusing RCRV's counsel of ethical and discovery violations, when the only counsel in this action which has made any factual contentions without evidentiary support is Defendants' counsel, Blakely Law Group.

As it is well established that RCRV cannot be compelled "to produce what does not exist," Defendants' request for any relief with respect to RFP Nos. 18 and 54 must be denied.  *See Williams v. Gyrus ACMI, LP*, 2016 WL 7013042, at *1 (N.D. Cal. Dec. 1, 2016).

## IV. RCRV'S KNOWLEDGE OF PRIOR USE OF THE INVERTED FLEUR-DE-LIS BY LAGUNA BEACH JEAN CO. (REQUEST NOS. 41, 42 AND INTERROGATORIES NOS. 18, 20)

### DEFENDANTS' REQUEST NO. 41:

DOCUMENTS sufficient to identify the date of and circumstances surrounding YOUR first knowledge of Steve Kim.

### RCRV'S RESPONSE TO REQUEST NO. 41:

**OBJECTION**:
RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV objects to this Request on the basis that the reference to "Steve Kim" is vague and ambiguous as used therein. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

<u>**RCRV'S SUPPLEMENTAL RESPONSE TO REQUEST NO. 41**</u>:

**OBJECTION**:

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV objects to this Request on the basis that the reference to "Steve Kim" is vague and ambiguous as used therein. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV stands by its objections to this Request.

## **DEFENDANTS' CONTENTIONS RE REQUEST NO. 41:**

The party seeking to compel discovery bears "the initial burden of establishing that its request" is relevant.  [<u>Ellis v. J.P. Morgan Chase & Co.</u>, 2014 U.S. Dist. LEXIS 45681 at *3 (N.D. Cal. Apr. 1, 2014); <u>In re Facebook Privacy Litig.</u>, 2015 U.S. Dist. LEXIS 75962, at *3 (N.D. Cal. June 11, 2015)]  Evidence of prior use of the inverted fleur-de-lis mark by a third-party is certainly relevant to whether or not RCRV can legitimately claim trademark rights to said mark.  Indeed, Affliction has brought a counterclaim for cancellation of the inverted fleur-de-lis mark pursuant to the Lanham Act, 15 U.S.C. §§ 1064(3), 1119.  Section 1064(3), provides that any person "who believes that he is or will be damaged" may petition to cancel a registered trademark on the ground, among others, that the "registration was obtained fraudulently." 15 U.S.C. § 1064(3).   "Cancellation of [a trademark] registration is proper when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." [<u>Star-Kist Foods, Inc. v. P.J. Rhodes & Co.</u>, 222 U.S.P.Q. 674, 675 (9th Cir. 1984)]  A petition to cancel a registration of a mark may be filed by any person who believes that he is or will be damaged by the registration of a mark." [<u>Id</u>. at 676]  Affliction must show that RCRV knowingly made false and material misrepresentations of fact in connection with its application for the inverted fleur-de-lis to the USPTO. [<u>Torres v. Cantine Torresella S.r.l.</u>, 808 F.2d 46, 48

1    (Fed. Cir. 1986) (An applicant fraudulently procures registration when it "knowingly

2    makes false, material representations of fact in connection with [its] application.");

3    Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990)]

4         The USPTO originally rejected RCRV's inverted fleur-de-lis mark as

5    ornamental.  (Covington Dec., ¶ 17, Ex. 14)  RCRV responded to the USPTO's office

6    action rejecting its application by submitting the Declaration of Lilly Kim, RCRV's

7    former General Counsel and Executive Vice President, wherein she alleged that said

8    mark had acquired distinctiveness, or in other words had achieved "secondary

9    meaning." (Covington Dec., ¶ 17, Ex. 15)  Ms. Kim's affidavit stated in relevant part

10   that RCRV had been using the inverted fleur-de-lis mark "was a new a unique design

11   that was unlike anything seen before in the apparel industry" and that the design had

12   become distinctive "through RCRV and its predecessor's exclusive and continuous use

13   of the design in commerce since March 2006." [3]  (Id.)  However, this statement, which

14   was made under oath, was false, because RCRV's owners knew at the time the

15   declaration was made and submitted that the Laguna Beach Jean Co. brand of

16   jeanswear, whose owner was Steve Kim, had exhibited an inverted fleur-de-lis mark

17   well before RCRV ever used it on its brand of jeans.  The fact that Steve Kim had

18   superior rights was demonstrated by RCRV paying Steve Kim $295,000 for those very

19   rights.  (Covington Dec., ¶ 18)  Contrary to RCRV's representation to the USPTO,

20

21   _____

22   [3] A registrant is "obligated to confirm the meaning and accuracy of the statements
     contained in the application  before signing the declaration and prior to the submission

23   to the USPTO." [Hachette Filipacchi Presse v. Elle Belle LLC, 85 U.S.P.Q.2d 1090,
     1094 (TTAB 2007)]  The USPTO "relies on the thoroughness, accuracy and honesty of

24   each applicant." [Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha, 77
     U.S.P.Q.2d 1917, 2006 TTAB LEXIS 9, *37, 2006 WL 173463 at *13 n.14 (TTAB

25   2006)]   As representations in the Statement of Use were required to be made under
     oath, RCRV had the legal duty to "confirm the meaning and accuracy of the statements

26   contained" in the Statement of Use before its submission to the USPTO.  [Hachette
     Fillipacchi Presse, 85 U.S.P.Q.2d at 1094; see also Hurley International LLC v. Volta,

27   82 U.S.P.Q.2d 1339, 1345 (TTAB. 2007)]

28

Steve Kim had superior rights to the inverted fleur-de-lis mark, and RCRV's use of said mark was far from exclusive.

While the information sought in this Request are clearly relevant to the parties' claims/defenses with respect to the validity and enforceability of RCRV's claim to the inverted fleur-de-lis trademark, RCRV has refused to produce any responsive documents to date.  In fact, following the parties' L.R. 37-1 meeting, RCRV served a supplemental responses thereto wherein it maintained its boilerplate objections to said requests.

RCRV has failed to explain why the burden of producing such documentation would outweigh the needs of this case, leaving Defendants and this Court without any basis upon which to analyze whether such an objection has merit.  [*See* Sperling v. Stein Mart, Inc., 2017 U.S. Dist. LEXIS 3668, *5 (C.D. Cal. Jan. 10, 2017) ("general or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections.") (citing A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006)); Cengage Learning, Inc. v. Davis Textbooks, 2016 U.S. Dist. LEXIS 126686, *5 (E.D. Cal. Sep. 16, 2016) ("Plaintiff having demonstrated relevance, it is defendant's 'heavy burden' to show why discovery should be denied. Defendants' general, boilerplate objections fail to meet that burden.")]  The requested information is not burdensome to obtain. Indeed, Kim's prior use of an inverted fleur-de-lis mark was the subject of an action which RCRV initiated against with Mr. Kim and LBJC, so the information and research related to same should be readily available to Plaintiff. Moreover, RCRV's objection that the reference to "Steve Kim" is vague and ambiguous is nothing short of ridiculous, as RCRV **sued** Steve Kim and has procured an assignment between Mr. Kim, LBJC and Plaintiff.

RCRV, in its special interrogatory responses, discusses Kim's/LBJC's prior use and ownership of an inverted fleur-de-lis mark. (*See* RCRV's response to Special Interrogatory No. 3)  Clearly, RCRV is aware that the information sought by these

21

1   RFPs is relevant to this action.

2       Accordingly, this Court should compel RCRV to produce documents in response

3   to Request No. 41 as they relate to the Inverted Fleur-de-Lis mark that is at issue in

4   this action.

5   **<u>RCRV'S CONTENTIONS RE REQUEST NO. 41:</u>**

6       For all the reasons set forth in the accompanying Declaration of Matthew T.

7   Salzmann, the documents sought by RFP No. 41—which are duplicative of the

8   information sought by Interrogatory No. 20, as discussed below—are completely

9   irrelevant to the claims at issue in this action, and Defendants' motion to compel their

10  production amounts to nothing more than an thinly veiled sideshow intended to

11  provide cover for Defendants' counsel to bandy about false allegations concerning the

12  validity of RCRV's federally-registered INVERTED FLEUR-DE-LIS DESIGN

13  trademark, not to mention the veracity of statements RCRV's former general counsel

14  made to the USPTO.  Salzmann Decl. ¶¶65-85.

15      Further, to the extent the defendants in the *Laguna* Action, Laguna and/or Steve

16  Kim, ever owned any rights in any fleur-de-lis design that were superior to RCRV's

17  rights in its INVERTED FLEUR-DE-LIS DESIGN—which RCRV vehemently

18  disputes—RCRV acquired those rights ***nearly five years ago***.  Salzmann Decl. ¶¶78-

19  79.  Of course, Defendants' counsel Mr. Blakely is well aware of this, as he

20  represented Laguna and Steve Kim in the *Laguna* Action, and negotiated the

21  settlement agreement on his clients' behalf.  Salzmann Decl. ¶77.  Defendants'

22  counsel's present story, in which it attempts to conflate RCRV's business decision to

23  resolve its dispute with Laguna and Steve Kim, with some sort of admission on

24  RCRV's part, is belied by the terms of that agreement, also negotiated by Mr. Blakely,

25  which expressly state that it "shall not be deemed, construed or treated in any respect

26  as an admission of wrongdoing, liability or damage on the part of any Party, for any

27  purpose."  Salzmann Decl. ¶77.

28

1   Furthermore, as Defendants' counsel is surely aware, even if the *Laguna* Action

2   defendants had such priority, a defendant in a trademark infringement action ***cannot***

3   raise a third party's prior use as a defense to an infringement claim.  *Committee for*

4   *Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir. 1996); *The Pet Stop*

5   *Professional Pet Sitting Serv., LLC v. The Professional Pet-Sitting*, 2008 WL 2185339,

6   at *7 (D. Or. May 1, 2008) ("cannot defeat [plaintiff's] infringement claim by

7   challenging its priority as against third parties who may have superior rights to the

8   marks").  As one prominent trademark commentator has recognized, a third party's

9   rights "should not be allowed as a defense in any trademark case.  So long as plaintiff

10  proves rights superior to defendant, that is enough.  Defendant is no less an infringer

11  because it is brought to account by a plaintiff whose rights may or may not be superior

12  to the whole world."  *McCarthy on Trademarks*, § 31:39.

13  Nevertheless, in an effort to limit the number of disputes between the parties, on

14  May 12, 2017, RCRV served a supplemental response to Defendants' Interrogatory

15  No. 20, which state, in pertinent part:

16          Subject to and without waiving the foregoing
        objections, RCRV states that sometime in mid-February
17      2008, RCRV attended an industry trade show known as the
        Project Show.  At the Project Show, representatives of RCRV
18      saw jeanswear products in Laguna Beach Jean Co.'s booth
        at the tradeshow bearing infringements of RCRV's
19      INVERTED FLEUR-DE-LIS DESIGN.  RCRV's
        representatives confronted representatives of Laguna Beach
20      Jean Co., including, upon information and belief, Steve Kim.
        At first, the Laguna Beach Jean Co. representatives denied
21      that Laguna Beach Jean Co.'s inverted fleur de lis design
        was similar in appearance to RCRV's INVERTED FLEUR-
22      DE-LIS DESIGN.  However, upon learning that Khiem
        Nguyen, the designer of the INVERTED FLEUR-DE-LIS
23      DESIGN, was in attendance at the show, Laguna Beach Jean
        Co. admitted copying the design and agreed to stop selling
24      the infringing design.

25  Salzmann Decl. ¶¶82, 84, Ex. M.  The foregoing supplemental response to

26  Interrogatory No. 20 provides the very information that Defendants purport to seek

27  through RFP 41, and, therefore, eliminates the need for RCRV to respond to this

28  burdensome document request.  Accordingly, the Court should deny any and all

1  requested relief with respect to Defendants' RFP 41.

2  **DEFENDANTS' REQUEST NO. 42**:

3  DOCUMENTS sufficient to identify the date of and
4  circumstances surrounding YOUR first knowledge of the
   Laguna Beach Jean Co. brand.

5  **RCRV'S RESPONSE TO REQUEST NO. 42**:

6  RCRV incorporates by reference the above-stated General
7  Objections as if fully set forth herein. RCRV further objects
   to this Request on the basis that it seeks documents that are
8  not relevant to any party's claim or defense, or proportional
   to the needs of the case, considering the importance of the
9  issues at stake in the action, the amount in controversy, the
   parties' relative access to relevant information, the parties'
10 resources, the importance of the discovery in resolving the
   issues, and whether the burden or expense of the proposed
11 discovery outweighs its likely benefit.

12 **RCRV'S SUPPLEMENTAL RESPONSE TO REQUEST
   NO. 42**:

13 **OBJECTION**:
14 RCRV incorporates by reference the above-stated General
   Objections as if fully set forth herein. RCRV further objects
   to this Request on the basis that it seeks documents that are

15 not relevant to any party's claim or defense, or proportional
16 to the needs of the case, considering the importance of the
   issues at stake in the action, the amount in controversy, the
17 parties' relative access to relevant information, the parties'
   resources, the importance of the discovery in resolving the
18 issues, and whether the burden or expense of the proposed
   discovery outweighs its likely benefit. RCRV stands by its
19 objections to this Request.

20 **DEFENDANTS' CONTENTIONS RE REQUEST NO. 42:**

21     Defendants reincorporate by reference the statements and arguments set forth in
22 its contentions with respect to Request No. 41 above as though fully set forth herein.
23 Based on the foregoing, Defendants respectfully request this Court to enter an order
24 compelling RCRV to produce documents in response to Request No. 42 as they relate
25 to the Inverted Fleur-de-Lis mark that is at issue in this action.

26 **RCRV'S CONTENTIONS RE REQUEST NO. 42:**

27     For all the reasons set forth in the accompanying Declaration of Matthew T.
28 Salzmann, the documents sought by RFP No. 42—which are duplicative of the

information sought by Interrogatory No. 18, as discussed below—are completely irrelevant to the claims at issue in this action, and Defendants' motion to compel their production amounts to nothing more than an thinly veiled sideshow intended to provide cover for Defendants' counsel to bandy about false allegations concerning the validity of RCRV's federally-registered INVERTED FLEUR-DE-LIS DESIGN trademark, not to mention the veracity of statements RCRV's former general counsel made to the USPTO.  Salzmann Decl. ¶¶65-85.

Further, to the extent the defendants in the *Laguna* Action, Laguna and/or Steve Kim, ever owned any rights in any fleur-de-lis design that were superior to RCRV's rights in its INVERTED FLEUR-DE-LIS DESIGN—which RCRV vehemently disputes—RCRV acquired those rights *nearly five years ago*.  Salzmann Decl. ¶¶78-79.  Of course, Defendants' counsel Mr. Blakely is well aware of this, as he represented Laguna and Steve Kim in the *Laguna* Action, and negotiated the settlement agreement on his clients' behalf.  Salzmann Decl. ¶77.  Defendants' counsel's present story, in which it attempts to conflate RCRV's business decision to resolve its dispute with Laguna and Steve Kim, with some sort of admission on RCRV's part, is belied by the terms of that agreement, also negotiated by Mr. Blakely, which expressly state that it "shall not be deemed, construed or treated in any respect as an admission of wrongdoing, liability or damage on the part of any Party, for any purpose."  Salzmann Decl. ¶77.

Furthermore, as Defendants' counsel is surely aware, even if the *Laguna* Action defendants had such priority, a defendant in a trademark infringement action *cannot* raise a third party's prior use as a defense to an infringement claim.  *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir. 1996); *The Pet Stop Professional Pet Sitting Serv., LLC v. The Professional Pet-Sitting*, 2008 WL 2185339, at *7 (D. Or. May 1, 2008) ("cannot defeat [plaintiff's] infringement claim by challenging its priority as against third parties who may have superior rights to the marks").  As one prominent trademark commentator has recognized, a third party's

1  rights "should not be allowed as a defense in any trademark case. So long as plaintiff

2  proves rights superior to defendant, that is enough. Defendant is no less an infringer

3  because it is brought to account by a plaintiff whose rights may or may not be superior

4  to the whole world." *McCarthy on Trademarks*, § 31:39.

5      Nevertheless, in an effort to limit the number of disputes between the parties, on

6  May 12, 2017, RCRV served a supplemental response to Defendants' Interrogatory

7  No. 18, which states, in pertinent part:

8          Subject to and without waiving the foregoing
         objections, RCRV states that sometime in mid-February
9      2008, RCRV attended an industry trade show known as the
       Project Show. At the Project Show, representatives of RCRV
10     saw jeanswear products in Laguna Beach Jean Co.'s booth
       at the tradeshow bearing infringements of RCRV's
11     INVERTED FLEUR-DE-LIS DESIGN. RCRV's
       representatives confronted representatives of Laguna Beach
12     Jean Co., including, upon information and belief, Steve Kim.
       At first, the Laguna Beach Jean Co. representatives denied
13     that Laguna Beach Jean Co.'s inverted fleur de lis design
       was similar in appearance to RCRV's INVERTED FLEUR-
14     DE-LIS DESIGN. However, upon learning that Khiem
       Nguyen, the designer of the INVERTED FLEUR-DE-LIS
15     DESIGN, was in attendance at the show, Laguna Beach Jean
       Co. admitted copying the design and agreed to stop selling
16     the infringing design.

17  Salzmann Decl. ¶¶82-83, Ex. M. The foregoing supplemental response to

18  Interrogatory No. 18 provides the very information that Defendants purport to seek

19  through RFP 42, and, therefore, eliminates the need for RCRV to respond to this

20  burdensome document request. Accordingly, the Court should deny any and all

21  requested relief with respect to Defendants' RFP 42.

22          **DEFENDANTS' SPECIAL INTERROGATORY NO. 18**:

23     IDENTIFY the date of and circumstances surrounding
       YOUR discovery of Laguna Beach Jean Co.'s or its
24     predecessor's use of an inverted fleur-de-lis mark on
       jeanswear.
25
       **RCRV'S RESPONSE TO SPECIAL**
26     **INTERROGATORY NO. 18**:
       **OBJECTION**:
27
28     RCRV incorporates by reference the above-stated General
       Objections as if fully set forth herein. RCRV further objects

to this Interrogatory on the basis that the phrase "or its predecessor's use" is vague and ambiguous as used therein. RCRV further objects to this Interrogatory on the basis that it seeks information that is not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV further objects to this Interrogatory on the basis that Defendants' Interrogatories contain twenty-one (21) individual interrogatories, many of which have multiple discrete subparts, rendering Defendants' Interrogatories in excess of the twenty-five (25) interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1).

## DEFENDANTS' CONTENTIONS RE INTERROGATORY NO. 18:

Defendants reincorporate by reference the statements and arguments set forth in its contentions with respect to Request No. 41 above as though fully set forth herein. Based on the foregoing, Defendants respectfully request this Court to enter an order compelling RCRV to supplement its response to Interrogatory No. 18 to explain with specificity their knowledge of use of an inverted fleur-de-lis design by Laguna Beach Jean Co. and/or its agents/predecessors. To the extent RCRV is permitted to respond to Interrogatory No. 18 by identification of documents pursuant to Fed.R.Civ.P. 33(d), RCRV shall be compelled to amend/supplement its responses to clearly identify the responsive documents by Bates Nos.

## RCRV'S CONTENTIONS RE INTERROGATORY NO. 18:

For all the reasons set forth in the accompanying Declaration of Matthew T. Salzmann, the information sought by Interrogatory No. 18 is completely irrelevant to the claims at issue in this action, and Defendants' motion to compel amounts to nothing more than an thinly veiled sideshow intended to provide cover for Defendants' counsel to bandy about false allegations concerning the validity of RCRV's federally-registered INVERTED FLEUR-DE-LIS DESIGN trademark, not to mention the veracity of statements RCRV's former general counsel made to the USPTO. Salzmann Decl. ¶¶65-85.

1    Further, to the extent the defendants in the *Laguna* Action, Laguna and/or Steve

2   Kim, ever owned any rights in any fleur-de-lis design that were superior to RCRV's

3   rights in its INVERTED FLEUR-DE-LIS DESIGN—which RCRV vehemently

4   disputes—RCRV acquired those rights ***nearly five years ago***.  Salzmann Decl. ¶¶78-

5   79.  Of course, Defendants' counsel Mr. Blakely is well aware of this, as he

6   represented Laguna and Steve Kim in the *Laguna* Action, and negotiated the

7   settlement agreement on his clients' behalf.  Salzmann Decl. ¶77.  Defendants'

8   counsel's present story, in which it attempts to conflate RCRV's business decision to

9   resolve its dispute with Laguna and Steve Kim, with some sort of admission on

10   RCRV's part, is belied by the terms of that agreement, also negotiated by Mr. Blakely,

11   which expressly state that it "shall not be deemed, construed or treated in any respect

12   as an admission of wrongdoing, liability or damage on the part of any Party, for any

13   purpose."  Salzmann Decl. ¶77.

14    Furthermore, as Defendants' counsel is surely aware, even if the *Laguna* Action

15   defendants had such priority, a defendant in a trademark infringement action ***cannot***

16   raise a third party's prior use as a defense to an infringement claim.  *Committee for*

17   *Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir. 1996); *The Pet Stop*

18   *Professional Pet Sitting Serv., LLC v. The Professional Pet-Sitting*, 2008 WL 2185339,

19   at *7 (D. Or. May 1, 2008) ("cannot defeat [plaintiff's] infringement claim by

20   challenging its priority as against third parties who may have superior rights to the

21   marks").  As one prominent trademark commentator has recognized, a third party's

22   rights "should not be allowed as a defense in any trademark case.  So long as plaintiff

23   proves rights superior to defendant, that is enough.  Defendant is no less an infringer

24   because it is brought to account by a plaintiff whose rights may or may not be superior

25   to the whole world."  *McCarthy on Trademarks*, § 31:39.

26    Nevertheless, in an effort to limit the number of disputes between the parties, on

27   May 12, 2017, RCRV served a supplemental response to Defendants' Interrogatory

28   No. 18, which states, in pertinent part:

1
2
3
4
5
6
7
8
9

     Subject to and without waiving the foregoing objections, RCRV states that sometime in mid-February 2008, RCRV attended an industry trade show known as the Project Show.  At the Project Show, representatives of RCRV saw jeanswear products in Laguna Beach Jean Co.'s booth at the tradeshow bearing infringements of RCRV's INVERTED FLEUR-DE-LIS DESIGN.  RCRV's representatives confronted representatives of Laguna Beach Jean Co., including, upon information and belief, Steve Kim.  At first, the Laguna Beach Jean Co. representatives denied that Laguna Beach Jean Co.'s inverted fleur de lis design was similar in appearance to RCRV's INVERTED FLEUR-DE-LIS DESIGN.  However, upon learning that Khiem Nguyen, the designer of the INVERTED FLEUR-DE-LIS DESIGN, was in attendance at the show, Laguna Beach Jean Co. admitted copying the design and agreed to stop selling the infringing design.

10

Salzmann Decl. ¶¶82-83, Ex. M.  The foregoing supplemental response to

11

Interrogatory No. 18 eliminates any dispute as the sufficiency of RCRV's response,

12

and the Court should deny any and all requested relief with respect to Defendants'

13

Interrogatory No. 18.

14

**DEFENDANTS' SPECIAL INTERROGATORY NO. 20**:

15
16

IDENTIFY the date of and circumstances surrounding YOUR discovery of Steve Kim's use of an inverted fleur-de-lis mark on jeanswear.

17
18

**RCRV'S RESPONSE TO SPECIAL INTERROGATORY NO. 20**:

19

**OBJECTION**:

20
21
22
23
24
25
26
27
28

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Interrogatory on basis that reference to "Steve Kim" is vague and ambiguous as used therein. RCRV further objects to this Interrogatory on the basis that it seeks information that is not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV further objects to this Interrogatory on the basis that Defendants' Interrogatories contain twenty-one (21) individual interrogatories, many of which have multiple discrete subparts, rendering Defendants' Interrogatories in excess of the twenty-five (25) interrogatory limit set forth in Federal Rule of Civil

1   Procedure 33(a)(1).

2   **DEFENDANTS' CONTENTIONS RE INTERROGATORY NO. 20:**

3   Defendants reincorporate by reference the statements and arguments set forth in

4   its contentions with respect to Request No. 41 above as though fully set forth herein.

5   Based on the foregoing, Defendants respectfully request this Court to enter an order

6   compelling RCRV to supplement its response to Interrogatory No. 20 to explain with

7   specificity their knowledge of use of an inverted fleur-de-lis design by Laguna Beach

8   Jean Co. and/or its agents/predecessors.  To the extent RCRV is permitted to respond

9   to Interrogatory No. 20 by identification of documents pursuant to Fed.R.Civ.P. 33(d),

10  RCRV shall be compelled to amend/supplement its responses to clearly identify the

11  responsive documents by Bates Nos.

12  **RCRV'S CONTENTIONS RE INTERROGATORY NO. 20:**

13  For all the reasons set forth in the accompanying Declaration of Matthew T.

14  Salzmann, the information sought by Interrogatory No. 20 is completely irrelevant to

15  the claims at issue in this action, and Defendants' motion to compel amounts to

16  nothing more than an thinly veiled sideshow intended to provide cover for Defendants'

17  counsel to bandy about false allegations concerning the validity of RCRV's federally-

18  registered INVERTED FLEUR-DE-LIS DESIGN trademark, not to mention the

19  veracity of statements RCRV's former general counsel made to the USPTO.  Salzmann

20  Decl. ¶¶65-85.

21  Further, to the extent the defendants in the *Laguna* Action, Laguna and/or Steve

22  Kim, ever owned any rights in any fleur-de-lis design that were superior to RCRV's

23  rights in its INVERTED FLEUR-DE-LIS DESIGN—which RCRV vehemently

24  disputes—RCRV acquired those rights ***nearly five years ago***.  Salzmann Decl. ¶¶78-

25  79.  Of course, Defendants' counsel Mr. Blakely is well aware of this, as he

26  represented Laguna and Steve Kim in the *Laguna* Action, and negotiated the

27  settlement agreement on his clients' behalf.  Salzmann Decl. ¶77.  Defendants'

28  counsel's present story, in which it attempts to conflate RCRV's business decision to

1  resolve its dispute with Laguna and Steve Kim, with some sort of admission on

2  RCRV's part, is belied by the terms of that agreement, also negotiated by Mr. Blakely,

3  which expressly state that it "shall not be deemed, construed or treated in any respect

4  as an admission of wrongdoing, liability or damage on the part of any Party, for any

5  purpose."  Salzmann Decl. ¶77.

6      Furthermore, as Defendants' counsel is surely aware, even if the *Laguna* Action

7  defendants had such priority, a defendant in a trademark infringement action ***cannot***

8  raise a third party's prior use as a defense to an infringement claim.  *Committee for*

9  *Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir. 1996); *The Pet Stop*

10 *Professional Pet Sitting Serv., LLC v. The Professional Pet-Sitting*, 2008 WL 2185339,

11 at *7 (D. Or. May 1, 2008) ("cannot defeat [plaintiff's] infringement claim by

12 challenging its priority as against third parties who may have superior rights to the

13 marks").  As one prominent trademark commentator has recognized, a third party's

14 rights "should not be allowed as a defense in any trademark case.  So long as plaintiff

15 proves rights superior to defendant, that is enough.  Defendant is no less an infringer

16 because it is brought to account by a plaintiff whose rights may or may not be superior

17 to the whole world."  *McCarthy on Trademarks*, § 31:39.

18      Nevertheless, in an effort to limit the number of disputes between the parties, on

19 May 12, 2017, RCRV served a supplemental response to Defendants' Interrogatory

20 No. 20, which states, in pertinent part:

21          Subject to and without waiving the foregoing
22   objections, RCRV states that sometime in mid-February
     2008, RCRV attended an industry trade show known as the
23   Project Show.  At the Project Show, representatives of RCRV
     saw jeanswear products in Laguna Beach Jean Co.'s booth
24   at the tradeshow bearing infringements of RCRV's
     INVERTED FLEUR-DE-LIS DESIGN.  RCRV's
25   representatives confronted representatives of Laguna Beach
     Jean Co., including, upon information and belief, Steve Kim.
26   At first, the Laguna Beach Jean Co. representatives denied
     that Laguna Beach Jean Co.'s inverted fleur de lis design
27   was similar in appearance to RCRV's INVERTED FLEUR-
     DE-LIS DESIGN.  However, upon learning that Khiem
28   Nguyen, the designer of the INVERTED FLEUR-DE-LIS
     DESIGN, was in attendance at the show, Laguna Beach Jean

1  Co. admitted copying the design and agreed to stop selling the infringing design.

2  Salzmann Decl. ¶¶82, 84, Ex. M.  The foregoing supplemental response to

3  Interrogatory No. 20 eliminates any dispute as the sufficiency of RCRV's response,

4  and the Court should deny any and all requested relief with respect to Defendants'

5  Interrogatory No. 20.

6  **V.    DOCUMENTS RELATED TO THE *GRACING* ACTION AND RCRV'S**

7  **ATTEMPTS TO SUPPRESS THE *GRACING* SURVEY (REQUEST NO.**

8  **44)**

9  **DEFENDANTS' REQUEST NO. 44:**

10  All DOCUMENTS REGARDING or RELATED TO
11  judicial, administrative, or alternative dispute resolution
proceeding in the courts of the United States, in the courts of
the several states, in the U.S. Patent and Trademark Office,
12  or in any alternative dispute resolution forum, brought by or
against PLAINTIFF concerning the RCRV FLEUR-DE-LIS,
13  including, but not limited to, all pleadings and formal papers
from such proceedings, all correspondence relating thereto,
14  and all DOCUMENTS RELATING TO the resolution
thereof, whether by settlement, or final decision.

15  **RCRV'S RESPONSE TO REQUEST NO. 44:**

16

17  **OBJECTION:**
RCRV incorporates by reference the above-stated General
18  Objections as if fully set forth herein.  RCRV further objects
to this Request on the grounds that it is overly broad, unduly
burdensome, cumulative and intended to harass RCRV in
19  that it seeks documents" regarding or relating to any dispute
concerning the INVERTED FLEUR-DE-LIS DESIGN
20  Trademark for a period of more than ten (10) years. RCRV
further objects to this Request on the basis that it seeks
21  documents that are not relevant to any party's claim or
defense, or proportional to the needs of the case, considering
22  the importance of the issues at stake in the action, the amount
in controversy, the parties' relative access to relevant
23  information, the parties' resources, the importance of the
discovery in resolving the issues, and whether the burden or
24  expense of the proposed discovery outweighs its likely
benefit. RCRV further objects to this Request on the basis
25  that it calls for the disclosure of proprietary, trade secret or
other commercially protected information, without the
26  protection of an appropriate protective order.

27  **RCRV'S SUPPLEMENTAL RESPONSE TO REQUEST
NO. 44:**

28

**OBJECTION:**

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome, cumulative and intended to harass RCRV in that it seeks "[a]ll documents" regarding or relating to any dispute concerning the INVERTED FLEUR-DE-LIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV stands by its objections to this Request.

## DEFENDANTS' CONTENTIONS RE REQUEST NO. 44:

The party seeking to compel discovery bears "the initial burden of establishing that its request" is relevant. [Ellis v. J.P. Morgan Chase & Co., 2014 U.S. Dist. LEXIS 45681 at *3 (N.D. Cal. Apr. 1, 2014); In re Facebook Privacy Litig., 2015 U.S. Dist. LEXIS 75962, at *3 (N.D. Cal. June 11, 2015)] The Committee specifically states that "other incidents of the same type, or involving the same product" are examples information that would be relevant to the parties' claims or defenses. [Fed.R.Civ.P. 26, Notes of Advisory Committee on 2015 Amendments; see also Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 489 (D.S.D. 2012); Struthers Patent Corp. v. Nestle Co., 558 F. Supp. 747, 760 (D.N.J. 1981) (where case involved the same intellectual property, claims, defenses, transcripts of the depositions of the plaintiff's personnel, and documents produced by the plaintiff as evidence supporting its claims as a prior matter, the court determined that the earlier litigation "must be highly relevant in the present action," and would "[a]mong things... bear upon the validity of [the plaintiff's intellectual property]..."] In Schneider v. Chipotle Mexican Grill, Inc., 2017 U.S. Dist. LEXIS 43652 (N.D. Cal. Mar. 24, 2017), the plaintiffs requested information produced by Chipotle in a prior lawsuit. The court granted plaintiff's motion to compel production of documents responsive to this request where both the claims and

1    the allegations brought against Chipotle in the instant action and the prior lawsuit

2    wherein the discovery was sought were very similar.  [Schneider v. Chipotle, 2017

3    U.S. Dist. LEXIS 43652 at *6]

4          Thus, to the extent there are other judicial, administrative, or alternative dispute

5    resolution proceedings wherein RCRV has asserted rights to the inverted fleur-de-lis

6    mark and/or has claimed infringement thereof by a third-party, documents related to

7    these proceedings are indeed relevant.  In fact, Defendants have already discovered a

8    survey, that RCRV had initially attempted to suppress in discovery, conducted in a

9    similar action—RCRV, Inc. v. Gracing, Inc. et al.; Case No.: 2:16-cv-02829-R

10   (AFMx) – wherein RCRV accuses Gracing of infringing its inverted fleur-de-lis mark.

11   Thus, not only is the survey itself relevant and discoverable, but as are RCRV's

12   communications with counsel for Gracing, Inc. concerning the Gracing Survey, which

13   occurred at multiple stages of the settlement process for that matter.  (Covington Dec.,

14   ¶ 11, Ex. 8)  Defendants have discussed this issue at length with RCRV, yet as it did

15   with the Gracing Survey itself,  RCRV is now attempting to withhold evidence that it

16   engaged in willful suppression.  (See Covington Dec., ¶¶ 11-12)

17         RCRV's counsel was presented with the Gracing Survey at the time it was filing

18   this present lawsuit against Defendants in connection with the very same mark.

19   Clearly, RCRV knew this evidence that demonstrated that the inverted fleur-de-lis

20   mark lacked secondary meaning was relevant to the present lawsuit.   If RCRV

21   attempted to conceal the existence of this survey, not only would this warrant a willful

22   suppression instruction at trial, it would be evidence of bad faith warranting a finding

23   of an exceptional case should Affliction prevail at trial.[4]   This would also hold true for

24   _____

25   [4] "An action may be considered exceptional '[w]hen a plaintiff's case is groundless,
     unreasonable, vexatious, or pursued in bad faith.'" [Secalt S.A. v. Wuxi Shenxi Constr.
26   Mach. Co., 668 F.3d 677, 687 (9th Cir. 2012) A claim is unreasonable or groundless if
     it is frivolous and fails to raise colorable or debatable issues. [See Applied Info. Scis.
27   Corp. v. eBay, Inc., 511 F.3d 966, 973 (9th Cir. 2007); see also Octane Fitness, LLC v.
28   ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014)]

any other surveys conducted in connection with the inverted fleur-de-lis which RCRV has attempted to suppress.

**RCRV'S CONTENTIONS RE REQUEST NO. 44:**

Defendants' attempt to tie this facially overbroad and oppressive document request to the *Gracing* Action and their counsel's salacious and utterly unsubstantiated allegations regarding RCRV's purported "attempt[s] to "suppress" the Poret Report—of which, RCRV understands, Blakely Law Group has possessed a copy (or portions thereof) since November 2016, and a full copy of which, including all backup materials, ***RCRV produced to Defendants two months ago***—is not only irresponsible, but falls far short of Defendants' counsel's obligations under the Federal Rules.

Defendants' RFP No. 44 calls for the production of ***every single document and communication*** generated in connection with any "judicial, administrative, or alternative dispute resolution proceeding in the courts of the United States, in the courts of the several states, in the U.S. Patent and Trademark Office, or in any alternative dispute resolution forum," brought by or against RCRV over a ten (10) year period concerning the INVERTED FLEUR-DE-LIS DESIGN Trademark. None of the cases Defendants' counsel cite supports this type of sweeping and untargeted discovery. In essence, this request improperly calls for production RCRV's ***entire litigation file***, including all communications RCRV's counsel has every had with any person concerning such actions. Although relevance under FRCP 26(b) is broadly defined, "it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

Indeed, "[t]he Court must limit discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'" *Roberts v. Prudential Inc. Co. of Am.*, 2013 WL 1431725, at *2 (S.D. Cal. Apr. 9, 2013) (internal citations omitted). This limitation "provide[s] a safeguard for

1    parties […] in light of the otherwise broad reach of discovery" (*Guthrey v. Cal. Dep't*

2    *of Corr. & Rehab.*, 2012 WL 3249554, at \*3 (E.D. Cal. Aug. 7, 2012)), and "is the

3    essence of proportionality—an all-too-often ignored discovery principle." *Apple v.*

4    *Samsung Electronics Co. Ltd.*, 2013 WL 4426512, at \*3 (N.D. Cal. Aug. 14, 2013).

5         Moreover, as defendants concede, the number of actions involving RCRV's

6    INVERTED FLEUR-DE-LIS DESIGN Trademark exceed twenty-five (25), and the

7    process of compiling and producing "[a]ll DOCUMENTS REGARDING or

8    RELATED TO" such actions would not only be overly burdensome and oppressive,

9    but not remotely proportional to the needs of this case.  And, it is not as if RCRV

10   refused to produce documents demonstrating its vigorous enforcement of its rights in

11   its INVERTED FLEUR-DE-LIS DESIGN Trademark; indeed, RCRV has diligently

12   produced the cease and desist letters, operative pleadings, judgments, consent

13   judgments and/or injunctions and dismissals, relating to each of the following

14   litigations involving the alleged infringement of RCRV's INVERTED FLEUR-DE-

15   LIS DESIGN:

16         i    *RCRV, Inc. d/b/a Rock Revival v. DrJays.com, Inc., et al.*, 1:17-cv-00660

17              (S.D.N.Y.) (RCRV002598-2615);

18         i    *RCRV, Inc. d/b/a Rock Revival v. Alpha Garment, Inc., et al.*, 1:16-cv-
                05708 (S.D.N.Y.) (RCRV002580-2597);

19         i    *RCRV, Inc. d/b/a Rock Revival v. Ghacham, Inc. d/b/a Platini Jeans Co.*,

20              *et al.*, 2:16-cv-01544 (C.D. Cal.) (RCRV002247-2269);

21         i    *RCRV, Inc. d/b/a Rock Revival v. Federal Jeans, Inc., et al.*, 1:16-cv-
                03736 (S.D.N.Y.) (RCRV002562-2579);

22         i    *RCRV, Inc. d/b/a Rock Revival v. Gracing Inc. d/b/a Grace in LA, et al.*,

23              2:16-cv-02829 (C.D. Cal.) (RCRV002539-2561);

24         i    *RCRV, Inc. d/b/a Rock Revival v. Adam Tala, Inc., et al.*, 2:15-cv-00550
                (C.D. Cal.) (RCRV002230-2246);

25         i    *RCRV, Inc. d/b/a Rock Revival v. Hidden Jeans, Inc., et al.*, 2:15-cv-2083

26              (C.D. Cal.) (RCRV002190-2223);

27         i    *RCRV, Inc. d/b/a Rock Revival v. Iramys Ojeda, et al.*, 2:14-cv-7688
                (C.D. Cal.) (RCRV002291-2325);

28

**JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES AND DOCUMENT PRODUCTION**

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Saitex International Inc., et al.*, 14-cv-5205 (S.D.N.Y.) (RCRV002122-2163);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Watch L.A. Jeans & Sportswear d/b/a Watch L.A., et al.*, 2:14-cv-7399 (C.D. Cal.) (RCRV000036);

i   *RCRV, Inc. d/b/a Rock Revival v. American Blues Company Inc., et al.*, 1:14-cv-01646 (S.D.N.Y.) (RCRV002088-2121);

i   *RCRV, Inc. d/b/a Rock Revival v. Rich Kids Jean Corp., et al.*, 1:14-cv-09587 (S.D.N.Y.) (RCRV002164-2189; RCRV002224-2229);

i   *RCRV, Inc. d/b/a Rock Revival v. Blue Cast Denim Co. Inc., et al.*, 14-cv-4211 (S.D.N.Y.) (RCRV002270-2290; RCRV002519-2538);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Kohl's Department Stores, et. al.*, 2:14-cv-7908 (C.D. Cal.) (RCRV000038);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Jean Jacket Clothing, Inc., et. al.*, 2:13-cv-07716 (C.D. Cal.) (RCRV001691-1780);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Cool-G, Inc., et al.*, 2:13-cv-02142 (C.D. Cal.) (RCRV001388-1620);

i   *RCRV, Inc. d/b/a Rock Revival v. Express, Inc., et al.*, 2:13-cv-07534 (C.D. Cal.) (RCRV001290-1324);

i   *RCRV, Inc. d/b/a Rock Revival v. E Fashion Wholesale, LLC d/b/a efashionwholesale.com, et al.*, 1:13-cv-01046 (S.D.N.Y. Cal.) (RCRV001257-1289);

i   *RCRV, Inc. d/b/a Rock Revival v. EJ Acquisition LLC d/b/a Earl Jeans, et al.*, 1:13-cv-01128 (S.D.N.Y.) (RCRV001621-1690);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Gitano Couture Inc., et al.*, 1:13-cv-07245 (S.D.N.Y.) (RCRV001967-2087);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Vault Denim, LLC, et al.*, 2:13-cv-8959 (C.D. Cal.) (RCRV001781-1966);

i   *RCRV, Inc. d/b/a Rock Revival v. Deals of Broadway Corp. d/b/a Deals Wholesale Corp., et al.*, 13-cv-2742 (S.D.N.Y.) (RCRV001325-1387);

i   *RCRV, Inc. d/b/a Rock Revival v. Meztizos USA Corp., et al.*, 2:12-cv-10852 (C.D. Cal.) (RCRV001145-1177);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. LA Idol Fashion, Inc., et al.*, 2:12-cv-06408 (C.D. Cal.) (RCRV001040-1086);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Downeast Outfitter, Inc. d/b/a Downeast Basics, et al.*, 2:12-cv-08726 (C.D. Cal.) (RCRV001188-1256);

i   *RCRV, Inc. d/b/a Rock Revival v. J.L.J., Inc. d/b/a Laguna Beach Jeans Co., et al.*, 2:12-cv-07609 (C.D. Cal.) (RCRV000494-640);

i   *RCRV, Inc. d/b/a Rock Revival v. Rue 21, Inc., et al.*, 2:11-cv-01217 (C.D. Cal.) (RCRV000289-315);

i   *RCRV, Inc. d/b/a Rock Revival v. J.L.J., Inc. d/b/a Laguna Beach Jeans Co., et al.*, 2:11-cv-08679 (C.D. Cal.) (RCRV000316-340);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. LA Idol Fashion, Inc., et al.*, 2:11-cv-06849 (C.D. Cal.) (RCRV000641-923);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Machine Jeans, Inc., et al.*, 2:11-cv-07773 (C.D. Cal.) (RCRV000924-1039; RCRV002326-2331); and

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Land 'N Sea, Inc., et al.*, 10-cv-7125 (S.D.N.Y.) (RCRV000203-288).

Salzmann Decl. ¶¶32, 94. RCRV has likewise produced other enforcement-related documents concerning disputes relating to the infringement of RCRV's INVERTED FLEUR-DE-LIS DESIGN Trademark that were resolved prior to litigation. *Id.* Yet, Defendants' counsel does not even attempt to explain why RCRV's extensive production, which dwarfs Defendants' combined production in this case, is allegedly insufficient.

At bottom, it appears that what Defendants are really after, and which its counsel now feebly attempts to shoehorn into the scope of Request No. 44, are "RCRV's communications with counsel for Gracing, Inc. concerning the Gracing Survey, which occurred at multiple stages of the settlement process for that matter." Putting aside for a moment the purported basis of Defendants' contention that there were "multiple stages" to confidential settlement discussions with Gracing's counsel, to which Defendants' counsel, Blakely Law Group, was not a party, Defendants neglect to mention that RCRV proposed to produce its counsel's communications with Gracing's counsel on the condition that Defendants withdraw a document subpoena Defendants purported to serve on RCRV's counsel, Arnold & Porter Kaye Scholer LLP, on April 14, 2017 (the "APKS Subpoena"). *See* Salzmann Decl. ¶¶56-57, Exs. E-F.

Specifically, on April 26, 2017, two days prior to serving APKS's objections to the Subpoena, RCRV's counsel wrote a letter to Blakely Law Group advising it of the Subpoena's numerous procedural and substantive deficiencies, and proposing the

following:

> To the extent Defendants agree to withdraw their improper Subpoena, be advised that RCRV would be prepared to produce its counsel's communications with Gracing's counsel relating to the report that Mr. Poret submitted in the Gracing Action.  RCRV would, of course, expect your firm to produce its communications with Gracing's counsel and Mr. Poret concerning the report Mr. Poret submitted in the Gracing Action, in response to a properly served request and/or subpoena calling for production of such materials.

Salzmann Decl. ¶57, Ex. F.  Tellingly, Defendants' counsel never responded to RCRV's proposal, as that would have brought this sideshow to an end.  Salzmann Decl. ¶58.  Instead, Defendants' counsel elected to purportedly serve a second document subpoena on APKS, requesting the exact same documents and communications as the initial Subpoena.[5]  Salzmann Decl. ¶58, Ex. G.  Had Defendants taken RCRV up on its proposal, they would have learned once and for all that their counsel's allegations and suppositions regarding RCRV's purported attempts to "suppress" and/or "destroy" the Poret Report lacked any basis in reality; indeed, under the circumstances, Blakely Law Group could not conceivably have claimed it did not know this.

Regardless of how Defendants' counsel would like to spin its intent behind RFP No. 44, this RFP is the quintessential example of an improperly broad, unfocused and untargeted discovery request, and Defendants' request for relief should be denied in its entirety.

## VI.  DISCOVERY REGARDING THE VALIDITY, ENFORCEABILITY, DISTINCTIVENESS OF THE INVERTED FLEUR-DE-LIS MARK IN RELATED ACTIONS (REQUESTS NOS. 45 AND 46)

### DEFENDANTS' REQUEST NO. 45:

---

[5] APKS served objections to the Subpoena on April 28, 2017 (*see* Salzmann Decl. ¶59, Ex. H), and objections to second subpoena on May 11, 2017 (*see* Salzmann Decl. ¶ Ex. I).

All depositions transcripts from any dispute, litigation, case, and/or action that YOU have had with any PERSON REGARDING or RELATED TO the RCRV FLEUR-DE-LIS.

**RCRV'S RESPONSE TO REQUEST NO. 45**:

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll depositions transcripts" from any dispute relating to the INVERTED FLEUR-DELIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV further objects to this Request on the basis that it calls for the disclosure of proprietary, trade secret or other commercially protected information, without the protection of an appropriate protective order.

**RCRV'S SUPPLEMENTAL RESPONSE TO REQUEST NO. 45**:

**OBJECTION**:
RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll depositions transcripts" from any dispute relating to the INVERTED FLEUR-DELIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense, or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV stands by its objections to this Request.

**DEFENDANTS' CONTENTIONS RE REQUEST NO. 45:**

The party seeking to compel discovery bears "the initial burden of establishing that its request" is relevant. [Ellis v. J.P. Morgan Chase & Co., 2014 U.S. Dist. LEXIS 45681 at *3 (N.D. Cal. Apr. 1, 2014); In re Facebook Privacy Litig., 2015 U.S. Dist.

LEXIS 75962, at *3 (N.D. Cal. June 11, 2015)]  The Committee specifically states that "other incidents of the same type, or involving the same product" are examples information that would be relevant to the parties' claims or defenses.  [Fed.R.Civ.P. 26, Notes of Advisory Committee on 2015 Amendments; see also Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 489 (D.S.D. 2012); Struthers Patent Corp. v. Nestle Co., 558 F. Supp. 747, 760 (D.N.J. 1981) (where case involved the same intellectual property, claims, defenses, transcripts of the depositions of the plaintiff's personnel, and documents produced by the plaintiff as evidence supporting its claims as a prior matter, the court determined that the earlier litigation "must be highly relevant in the present action," and would "[a]mong things... bear upon the validity of [the plaintiff's intellectual property]...")]  In Schneider v. Chipotle Mexican Grill, Inc., 2017 U.S. Dist. LEXIS 43652 (N.D. Cal. Mar. 24, 2017), the plaintiffs requested information produced by Chipotle in a prior lawsuit.  The court granted plaintiff's motion to compel production of documents responsive to this request where both the claims and the allegations brought against Chipotle in the instant action and the prior lawsuit wherein the discovery was sought were very similar.  [Schneider v. Chipotle, 2017 U.S. Dist. LEXIS 43652 at *6]

     RCRV, on the other hand, has again failed to show how or why production of documents responsive to this Request would be burdensome or outweighs the needs of the present matter.  RCRV, for example, objects to these Requests on the grounds that the documents sought relate to the "INVERTED FLEUR-DELIS DESIGN Trademark for a period of more than ten (10) years."  However, without any information as to how many discovery responses or depositions RCRV has provided over the last ten years (e.g. one versus fifty), an objection based on a ten- year period alone does not have any bearing on whether or not the Request as worded is overly broad at all.

     Thus, to the extent there is deposition testimony made on behalf of RCRV regarding the validity, inherent or acquired distinctiveness, and/or enforceability of the

1  asserted inverted fleur-de-lis mark, such documents are relevant and discoverable and

2  should be produced.

3  **RCRV'S CONTENTIONS RE REQUEST NO. 45:**

4      Defendants' RFP No. 45 calls for the production of ***all transcripts from any***

5  ***deposition taken in any dispute, litigation, case, and/or action involving RCRV's***

6  ***INVERTED FLEUR-DE-LIS DESIGN Trademark*** over a ten (10) year period.

7  Once again, none of the cases Defendants' counsel cite supports this type of sweeping

8  and untargeted discovery.  Although relevance under FRCP 26(b) is broadly defined,

9  "it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234

10  F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

11      Indeed, "[t]he Court must limit discovery if it determines that 'the burden or

12  expense of the proposed discovery outweighs its likely benefit, considering the needs

13  of the case, the amount in controversy, the parties' resources, the importance of the

14  issues at stake in the action, and the importance of the discovery in resolving the

15  issues.'" *Roberts v. Prudential Inc. Co. of Am.*, 2013 WL 1431725, at *2 (S.D. Cal.

16  Apr. 9, 2013) (internal citations omitted).  This limitation "provide[s] a safeguard for

17  parties […] in light of the otherwise broad reach of discovery" (*Guthrey v. Cal. Dep't*

18  *of Corr. & Rehab.*, 2012 WL 3249554, at *3 (E.D. Cal. Aug. 7, 2012)), and "is the

19  essence of proportionality—an all-too-often ignored discovery principle." *Apple v.*

20  *Samsung Electronics Co. Ltd.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013).

21      As Defendants concede, over the years RCRV has diligently protected and

22  enforced its highly valuable INVERTED FLEUR-DE-LIS DESIGN Trademark against

23  unscrupulous infringers, like Defendants here, who seek to ride on the coattails of its

24  success and the popularity of its jeanswear bearing the INVERTED FLEUR-DE-LIS

25  DESIGN Trademark.  Salzmann Decl. ¶93.  As evidenced in RCRV's initial February

26  16, 2017 document production in this action, RCRV has commenced numerous civil

27  litigations since 2010 to protect its rights in its INVERTED FLEUR-DE-LIS DESIGN

28  Trademark.  Salzmann Decl. ¶94.   While only one of these actions has proceeded

1    through trial to judgment—namely, the *LA Idol Fashion, Inc.* action (2:11-cv-06849

2    (C.D. Cal.)) which resulted in a jury verdict finding that the defendants had willfully

3    infringed RCRV INVERTED FLEUR-DE-LIS DESIGN Trademark (2:11-cv-06849,

4    Dkt. No. 206)—many of these actions have involved extensive written, oral and

5    document discovery, and motion practice.  Salzmann Decl. ¶95.

6          For example, multiple witnesses have been deposed in connection with at least

7    the following actions:[6]

8          i    *RCRV, Inc. d/b/a Rock Revival v. Federal Jeans, Inc., et al.*, 1:16-cv-
9               03736 (S.D.N.Y.) (RCRV002562-2579);

10         i    *RCRV, Inc. d/b/a Rock Revival v. Rich Kids Jean Corp., et al.*, 1:14-cv-
                09587 (S.D.N.Y.) (RCRV002164-2189; RCRV002224-2229);

11         i    *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Vault Denim, LLC, et
12              al.*, 2:13-cv-8959 (C.D. Cal.) (RCRV001781-1966);

13         i    *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. LA Idol Fashion, Inc.,
                et al.*, 2:12-cv-06408 (C.D. Cal.) (RCRV001040-1086);

14         i    *RCRV, Inc. d/b/a Rock Revival v. J.L.J., Inc. d/b/a Laguna Beach Jeans
15              Co., et al.*, 2:12-cv-07609 (C.D. Cal.) (RCRV000494-640); and

16         i    *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. LA Idol Fashion, Inc.,
                et al.*, 2:11-cv-06849 (C.D. Cal.) (RCRV000641-923).

17

18   Salzmann Decl. ¶¶94-95.  Moreover, as indicated in certain of the case captions

19   identified above, many of RCRV's trademark enforcement actions have been brought

20   as joint actions with its affiliate company, Sweet People Apparel, Inc. d/b/a Miss Me

21   ("Sweet People"), and in many instances the testimony elicited in those actions relates

22   to claims asserted by both RCRV and Sweet People.  Salzmann Decl. ¶96.

23   Furthermore, in a majority of the foregoing actions—as is the case here—the discovery

24   materials exchanged and the deposition testimony provided are subject to protective

25   _____

26   [6] This list does not include formal actions where the parties informally exchanged
27   discovery in furtherance of settlement, or disputes that did not rise to the level of
     formal litigation where the parties informally exchanged discovery in furtherance of
28   settlement.

**JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES AND DOCUMENT PRODUCTION**

orders restricting the disclosure of third party confidential material. Salzmann Decl. ¶97.

In light of the foregoing, requiring RCRV to compile and produce all transcripts from any deposition taken in any litigation involving RCRV's INVERTED FLEUR-DE-LIS DESIGN Trademark would be unduly burdensome and entirely disproportional to the value of the discovery sought.  Accordingly, Defendants' motion for relief with respect to RFP 45 should be denied in its entirety.

## DEFENDANTS' REQUEST NO. 46:

All discovery requests and discovery responses that YOU received and/or produced during any dispute, litigation, case, and/or action that YOU have had with any PERSON REGARDING or RELATED TO the RCRV FLEUR-DE-LIS.

## RCRV'S RESPONSE TO REQUEST NO. 46:

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll discovery requests and discovery responses" that RCRV has received and/or produced in connection with any dispute relating to the INVERTED FLEUR-DE-LIS DESIGN Trademark for a period of more than ten (10) years. RCRV further objects to this Request on the basis that it seeks documents that are not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. RCRV further objects to this Request on the basis that it calls for the disclosure of proprietary, trade secret or other commercially protected information, without the protection of an appropriate protective order.

## RCRV'S SUPPLEMENTAL RESPONSE TO REQUEST NO. 46:

RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Request on the grounds that it is overly broad, unduly burdensome and intended to harass RCRV in that it seeks "[a]ll discovery requests and discovery responses" that RCRV has received and/or produced in connection with any

1   dispute relating to the INVERTED FLEUR-DE-LIS DESIGN Trademark for a period of more than ten (10) years.

2   RCRV further objects to this Request on the basis that it
3   seeks documents that are not relevant to any party's claim or defense and proportional to the needs of the case, considering
4   the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant
5   information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or
6   expense of the proposed discovery outweighs its likely benefit. RCRV stands by its objections to this Request.

7   **DEFENDANTS' CONTENTIONS RE REQUEST NO. 46:**

8       Defendants reincorporate by reference the statements and arguments set forth in

9   its contentions with respect to Request No. 45 above as though fully set forth herein.

10  Based on the foregoing, Defendants respectfully request this Court to enter an order

11  compelling RCRV to produce any discovery responses made on behalf of RCRV

12  regarding the validity, inherent or acquired distinctiveness, and/or enforceability of the

13  asserted inverted fleur-de-lis mark.

14  **RCRV'S CONTENTIONS RE REQUEST NO. 46:**

15      Defendants' RFP No. 46 calls for the production of ***every discovery request and***

16  ***discovery response produced or received by RCRV in any dispute, litigation, case,***

17  ***and/or action involving RCRV's INVERTED FLEUR-DE-LIS DESIGN Trademark***

18  over a ten (10) year period.  Once again, none of the cases Defendants' counsel cite

19  supports this type of sweeping and untargeted discovery.  Although relevance under

20  FRCP 26(b) is broadly defined, "it is not without ultimate and necessary boundaries."

21  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and

22  quotations omitted).

23      Indeed, "[t]he Court must limit discovery if it determines that 'the burden or

24  expense of the proposed discovery outweighs its likely benefit, considering the needs

25  of the case, the amount in controversy, the parties' resources, the importance of the

26  issues at stake in the action, and the importance of the discovery in resolving the

27  issues.'"  *Roberts v. Prudential Inc. Co. of Am.*, 2013 WL 1431725, at *2 (S.D. Cal.

28  Apr. 9, 2013) (internal citations omitted).  This limitation "provide[s] a safeguard for

1   parties […] in light of the otherwise broad reach of discovery" (*Guthrey v. Cal. Dep't*

2   *of Corr. & Rehab.*, 2012 WL 3249554, at \*3 (E.D. Cal. Aug. 7, 2012)), and "is the

3   essence of proportionality—an all-too-often ignored discovery principle." *Apple v.*

4   *Samsung Electronics Co. Ltd.*, 2013 WL 4426512, at \*3 (N.D. Cal. Aug. 14, 2013).

5           As Defendants concede, over the years RCRV has diligently protected and

6   enforced its highly valuable INVERTED FLEUR-DE-LIS DESIGN Trademark against

7   unscrupulous infringers, like Defendants here, who seek to ride on the coattails of its

8   success and the popularity of its jeanswear bearing the INVERTED FLEUR-DE-LIS

9   DESIGN Trademark.  Salzmann Decl. ¶93.  As evidenced in RCRV's initial February

10  16, 2017 document production in this action, RCRV has commenced numerous civil

11  litigations since 2010 to protect its rights in its INVERTED FLEUR-DE-LIS DESIGN

12  Trademark.  Salzmann Decl. ¶94.   While only one of these actions has proceeded

13  through trial to judgment—namely, the *LA Idol Fashion, Inc.* action (2:11-cv-06849

14  (C.D. Cal.)) which resulted in a jury verdict finding that the defendants had willfully

15  infringed RCRV INVERTED FLEUR-DE-LIS DESIGN Trademark (2:11-cv-06849,

16  Dkt. No. 206)—many of these actions have involved extensive written, oral and

17  document discovery, and motion practice.  Salzmann Decl. ¶95.

18          For example, RCRV has served and/or received written discovery (*i.e.*, requests

19  for production, interrogatories and/or requests to admit) in at least the following

20  actions:[7]

21          i   *RCRV, Inc. d/b/a Rock Revival v. Alpha Garment, Inc., et al.*, 1:16-cv-
            05708 (S.D.N.Y.) (RCRV002580-2597);
22

23          i   *RCRV, Inc. d/b/a Rock Revival v. Federal Jeans, Inc., et al.*, 1:16-cv-
            03736 (S.D.N.Y.) (RCRV002562-2579);
24
            i   *RCRV, Inc. d/b/a Rock Revival v. Gracing Inc. d/b/a Grace in LA, et al.*,
25          2:16-cv-02829 (C.D. Cal.) (RCRV002539-2561);

26

27  ────────────────

28  [7] This list does not include disputes that did not rise to the level of formal litigation,
    where the parties informally exchanged discovery in furtherance of settlement.

i   *RCRV, Inc. d/b/a Rock Revival v. Hidden Jeans, Inc., et al.*, 2:15-cv-2083 (C.D. Cal.) (RCRV002190-2223);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Watch L.A. Jeans & Sportswear d/b/a Watch L.A., et al.*, 2:14-cv-7399 (C.D. Cal.) (RCRV000036);

i   *RCRV, Inc. d/b/a Rock Revival v. American Blues Company Inc., et al.*, 1:14-cv-01646 (S.D.N.Y.) (RCRV002088-2121);

i   *RCRV, Inc. d/b/a Rock Revival v. Rich Kids Jean Corp., et al.*, 1:14-cv-09587 (S.D.N.Y.) (RCRV002164-2189; RCRV002224-2229);

i   *RCRV, Inc. d/b/a Rock Revival v. Blue Cast Denim Co. Inc., et al.*, 14-cv-4211 (S.D.N.Y.) (RCRV002270-2290; RCRV002519-2538);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Kohl's Department Stores, et. al.*, 2:14-cv-7908 (C.D. Cal.) (RCRV000038);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Jean Jacket Clothing, Inc., et. al.*, 2:13-cv-07716 (C.D. Cal.) (RCRV001691-1780);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Cool-G, Inc., et al.*, 2:13-cv-02142 (C.D. Cal.) (RCRV001388-1620);

i   *RCRV, Inc. d/b/a Rock Revival v. Express, Inc., et al.*, 2:13-cv-07534 (C.D. Cal.) (RCRV001290-1324);

i   *RCRV, Inc. d/b/a Rock Revival v. EJ Acquisition LLC d/b/a Earl Jeans, et al.*, 1:13-cv-01128 (S.D.N.Y.) (RCRV001621-1690);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Gitano Couture Inc., et al.*, 1:13-cv-07245 (S.D.N.Y.) (RCRV001967-2087);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Vault Denim, LLC, et al.*, 2:13-cv-8959 (C.D. Cal.) (RCRV001781-1966);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. LA Idol Fashion, Inc., et al.*, 2:12-cv-06408 (C.D. Cal.) (RCRV001040-1086);

i   *RCRV, Inc. d/b/a Rock Revival v. J.L.J., Inc. d/b/a Laguna Beach Jeans Co., et al.*, 2:12-cv-07609 (C.D. Cal.) (RCRV000494-640);

i   *RCRV, Inc. d/b/a Rock Revival v. Rue 21, Inc., et al.*, 2:11-cv-01217 (C.D. Cal.) (RCRV000289-315);

i   *RCRV, Inc. d/b/a Rock Revival v. J.L.J., Inc. d/b/a Laguna Beach Jeans Co., et al.*, 2:11-cv-08679 (C.D. Cal.) (RCRV000316-340);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. LA Idol Fashion, Inc., et al.*, 2:11-cv-06849 (C.D. Cal.) (RCRV000641-923);

i   *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Machine Jeans, Inc., et al.*, 2:11-cv-07773 (C.D. Cal.) (RCRV000924-1039; RCRV002326-2331); and

1          i    *Sweet People Apparel, Inc. d/b/a Miss Me, et al. v. Land 'N Sea, Inc., et al.*, 10-cv-7125 (S.D.N.Y.) (RCRV000203-288).

2

3 Salzmann Decl. ¶¶94-95.  Moreover, as indicated in certain of the case captions

4 identified above, many of RCRV's trademark enforcement actions have been brought

5 as joint actions with its affiliate company, Sweet People Apparel, Inc. d/b/a Miss Me

6 ("Sweet People"), and in many instances the discovery exchanged in those actions

7 relates to claims asserted by both RCRV and Sweet People.  Salzmann Decl. ¶96.

8 Furthermore, in a majority of the foregoing actions—as is the case here—the discovery

9 materials exchanged and the deposition testimony provided are subject to protective

10 orders restricting the disclosure of third party confidential material. Salzmann Decl.

11 ¶97.

12        In light of the foregoing, requiring RCRV to compile and produce each and

13 every discovery request served, received and/or responded to in any action involving

14 RCRV's INVERTED FLEUR-DE-LIS DESIGN would be unduly burdensome and

15 entirely disproportional to the value of the discovery sought.  Accordingly,

16 Defendants' motion for relief with respect to RFP 46 should be denied in its entirety.

17 ## VII.  FACTS AND CIRCUMSTANCES SURROUNDING RCRV'S FIRST USE

18 ## OF THE INVERTED FLEUR-DE-LIS MARK ( INTERROGATORY NO.

19 ## 2)

20 **DEFENDANTS' SPECIAL INTERROGATORY NO. 2:**
IDENTIFY the circumstances surrounding PLAINTIFF's, or
21 any of its predecessor-in-interest's, first use of the RCRV
FLEUR-DE-LIS in commerce.

22 **RCRV'S RESPONSE TO SPECIAL
INTERROGATORY NO. 2:**
23

24 **OBJECTION:**
RCRV incorporates by reference the above-stated General
25 Objections as if fully set forth herein. RCRV further objects
to this Interrogatory on the basis that it is overly broad and
26 unduly burdensome in scope in that it calls for RCRV to
"[d]escribe the circumstances surrounding" its and its
27 predecessor-in-interest's first use of the INVERTED
FLEUR-DE-LIS DESIGN Trademark in commerce. RCRV
28 further objects to this Interrogatory on the grounds that its

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

seeks information that is outside of RCRV's possession, custody or control.

**RESPONSE:**
Subject to and without waiving the foregoing objections, RCRV states that the circumstances surrounding the first use in commerce of the INVERTED FLEUR-DE-LIS consisted of the importation of product into the United States and the subsequent delivery of that product to a customer of RCRV's predecessor-in-interest.

## DEFENDANTS' CONTENTIONS RE SPECIAL INTERROGATORY NO. 2:

This Interrogatory seeks the circumstances surrounding RCRV's first use of the inverted fleur-de-lis in commerce, including identification of the date and place(s) at which the first use occurred. RCRV's response does not provide this information. During out meet and confer, RCRV mentioned that there may be a transactional document providing this information. (*See* Covington Dec., ¶ 9, Ex. 6, pp. 3-4 ) If so, then this response must be supplemented to indicate such.  Again, RCRV has failed to explain exactly why it would be burdensome to provide a proper response to this Interrogatory.

Though this seeks a straightforward answer which would not normally require the use of Fed. R. Civ. P. 33(d), to the extent that RCRV does think to do so to supplement this response, production of documents pursuant to Fed. R. Civ. P. 33(d) is only appropriate where the information sought may be obtained by examining the responding party's business records and answering the questions would require the responding party to engage in burdensome or expensive research. [Fed. R. Civ. P. 33(d); Daiflon, Inc. v. Allied Chem. Corp., 534 F.2d 221, 225 (10th Cir. 1976)] Further, a party may exercise this option by "specifying the records" from which the answer must be "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[Fed. R. Civ. P. 33(d)(1); Cambridge Electronics Corp. v. MGA Electronics, Inc., 227 FRD 313, 323 (C.D. Cal. 2004)]

Accordingly, this Court should compel RCRV to supplement and/or amend this response to provide the requested information, without the use of procedures provided

**JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES AND DOCUMENT PRODUCTION**

by Fed. R. Civ. P. 33(d), which are not appropriate for this particular Interrogatory. To the extent RCRV is permitted to respond to Interrogatory No. 2 by identification of documents pursuant to Fed.R.Civ.P. 33(d), RCRV shall be compelled to amend/supplement its responses to clearly identify the responsive documents by Bates Nos.

**RCRV'S CONTENTIONS RE SPECIAL INTERROGATORY NO. 2:**

Interrogatory No. 2 calls upon RCRV to state the circumstances surrounding RCRV's or any of its predecessor-in-interest's first use of the INVERTED FLEUR-DE-LIS DESIGN Trademark in commerce.  RCRV provided a complete response to Interrogatory No. 2 over three months ago, on February 10, 2017.  *See* Covington Decl. Ex. 4.  As anticipated in the text of Defendants' Interrogatory No. 2, and confirmed by RCRV's response, the INVERTED FLEUR-DE-LIS DESIGN Trademark was first used in commerce by RCRV's predecessor-in-interest.  The date of that first use in commerce is memorialized on the face of RCRV's federal trademark registration certificate for its INVERTED FLEUR-DE-LIS DESIGN Trademark— March 17, 2006—which registration was attached to RCRV's April 28, 2016 cease and desist letter (Salzmann Decl. ¶6, Ex. A), as well as RCRV's First Amended Complaint (Dkt. No. 26 (RCRV's First Amended Complaint), Ex. 1).  Moreover, RCRV has produced the complete USPTO file wrapper for its INVERTED FLEUR-DE-LIS DESIGN Trademark (U.S. Trademark Reg. No. 4,248,371 (RCRV000018-202)). Salzmann Decl. ¶32.

As the INVERTED FLEUR-DE-LIS DESIGN Trademark was first used in commerce by RCRV's predecessor-in-interest, which party is identified in RCRV's document production (Salzmann Decl. ¶32 (RCRV004730-4738)), RCRV is not in a position to state with any particularity the "place(s) at which the first use occurred."

While RCRV's counsel did agree during the March 3, 2017 meeting of counsel to endeavor to locate a transactional (or other) document, if any, reflecting the particulars of RCRV's predecessor-in-interest's first use of the INVERTED FLEUR-

50

DE-LIS DESIGN Trademark in commerce on March 17, 2006, those efforts have not identified any such document.  Surely this is not surprising, as the first use in commerce occurred over eleven years ago, under the direction of RCRV's predecessor-in-interest.

Accordingly, RCRV has responded to Interrogatory No. 2 to the best of its ability, and Defendants' request for any relief with respect to Interrogatory No. 2 must be denied.

## VIII.   FACTS SUPPORTING RCRV'S CONTENTIONS THAT INVERTED FLEUR-DE-LIS HAS ACHIEVED SECONDARY MEANING (INTERROGATORY NO. 6)

**DEFENDANTS' SPECIAL INTERROGATORY NO. 6**:

IDENTIFY all facts which support YOUR contention in Paragraph 3 of the FAC that the "consumers had come to recognize [the RCRV FLEUR-DE-LIS] and associate it exclusively with Plaintiff."

**RCRV'S RESPONSE TO SPECIAL INTERROGATORY NO. 6**:

**OBJECTION**:
RCRV incorporates by reference the above-stated General Objections as if fully set forth herein. RCRV further objects to this Interrogatory on the basis that the term "[i]dentify" is vague and ambiguous as used therein. RCRV further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in scope to the extent it purports to call for the identification of "all facts" that support RCRV's contention that the INVERTED FLEUR-DE-LIS DESIGN Trademark serves as an indicator of source for RCRV's products. RCRV further objects to this Interrogatory on the basis that it calls for the disclosure of proprietary, trade secret or other commercially protected information, without the protection of an appropriate protective order. RCRV further objects to this Interrogatory on the basis that Defendants' Interrogatories contain twenty-one (21) individual interrogatories, many of which have multiple discrete subparts, rendering Defendants' Interrogatories in excess of the twenty-five (25) interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1).

**RESPONSE**:
Subject to and without waiving the foregoing objections, RCRV states that pursuant to Rule 33(d) of the Federal Rules

51

of Civil Procedure, it will produce documents sufficient to demonstrate that the INVERTED FLEUR-DE-LIS DESIGN Trademark serves as an indicator of source for RCRV's products, following the entry of an appropriate protective order.

## DEFENDANTS' CONTENTIONS RE SPECIAL INTERROGATORY NO. 6:

At the outset, this Interrogatory seeks factual support for RCRV's own allegation. An objection that this Interrogatory contains subparts is without merit. Further, RCRV's reference to Fed. R. Civ. P. 33(d) is improper. Production of documents pursuant to Fed. R. Civ. P. 33(d) is only appropriate where the information sought may be obtained by examining the responding party's business records and answering the questions would require the responding party to engage in burdensome or expensive research. [Fed. R. Civ. P. 33(d); Daiflon, 534 F.2d at 225]  Further, a party may exercise this option by "specifying the records" from which the answer must be "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." [Fed. R. Civ. P. 33(d)(1); Cambridge Electronics, 227 FRD at 323]  RCRV has neither demonstrated the necessity to respond with documents nor specifically identified any responsive documents.

Accordingly, Defendants request that this Court compel RCRV to supplement and/or amend this response to provide all of the information requested.  If RCRV shows the need to use procedures provided by Fed. R. Civ. P. 33(d), then this Court should further order that RCRV specify the records by identifying the bates stamp numbers from which the answer to this Interrogatory can be derived.  To the extent RCRV is permitted to respond to Interrogatory No. 6 by identification of documents pursuant to Fed.R.Civ.P. 33(d), RCRV shall be compelled to amend/supplement its responses to clearly identify the responsive documents by Bates Nos.

## RCRV'S CONTENTIONS RE SPECIAL INTERROGATORY NO. 6:

Although RCRV believes that its prior production of documents in response to Interrogatory No. 6 satisfied its obligations pursuant to FRCP 33(d), in order to avoid further unnecessary disputes, on May 12, 2017, RCRV served Supplemental

1   Objections and Responses to Interrogatory No. 6.  Salzmann Decl. ¶¶86-89, Ex. M.

2   RCRV's supplemental response to Interrogatory No. 6 states, in pertinent part:

3           Subject to and without waiving the foregoing
    objections, RCRV states that in March 2006, RCRV's
4   predecessor first introduced into commerce in the United
    States the INVERTED FLEUR-DE-LIS DESIGN
5   Trademark, a new and unique design that was unlike any
    pocket stitch or other design previously used in the jeanswear
6   industry.  Given its innovative design characteristics, the
    INVERTED FLEUR-DE-LIS DESIGN was a distinctive
7   identifier that quickly became associated with ROCK
    REVIVAL brand jeanswear products on which it appeared.
8
            In addition, for many years, RCRV products bearing
9   the INVERTED FLEUR-DE-LIS DESIGN have been
    distributed and sold in over 900 stores worldwide, including
10  well-known retailers such as Bloomingdale's and Nordstrom.
    In addition, products bearing the INVERTED FLEUR-DE-
11  LIS DESIGN are sold on-line at RCRV's ROCK REVIVAL
    brand official website, www.rockrevival.com, and on
12  websites affiliated with RCRV's authorized retail department
    stores, including The Buckle and Nordstrom.
13
            In the United States, sales of products bearing RCRV's
14  INVERTED FLEUR-DE-LIS DESIGN have exceeded $100
    million annually since 2014.  Moreover, RCRV and its
15  predecessor have consistently promoted the INVERTED
    FLEUR-DE-LIS DESIGN as an indicator of source for
16  ROCK REVIVAL jeans, expending substantial amounts of
    money doing so.  In particular, for more than ten years, the
17  INVERTED FLEUR-DE-LIS DESIGN has enjoyed coverage
    in leading mainstream and fashion publications in the United
18  States.  For example, the leading fashion industry publication
    *Women's Wear Daily* listed ROCK REVIVAL as the tenth-
19  most searched-for denim brand in its April 2009 edition and
    in its November 2009 edition, focusing on jeanswear rear
20  pocket designs, including, in the case of RCRV, the
    INVERTED FLEUR-DE-LIS DESIGN.  The INVERTED
21  FLEUR-DE-LIS DESIGN is also featured on the rear pocket
    of nearly all RCRV jeanswear products, and all depictions of
22  such products on RCRV's and its customers' retail websites
    focus on the design.  Further, celebrities have repeatedly been
23  photographed wearing RCRV jeanswear bearing the
    INVERTED FLEUR-DE-LIS DESIGN, creating millions of
24  commercial "impressions" of the design, including Steven
    Tyler, lead singer of the famous rock band Aerosmith, in
25  *Rolling Stone* magazine; the Oscar winning actress, Halle
    Berry, in *US Weekly*; Teri Hatcher on the popular television
26  show Desperate Housewives; a finalist on the then-number
    one rated television show American Idol, Casey James; and
27  National Football League star and recent Dancing With The
    Stars winner, Hines Ward.
28

Accordingly, in addition to being, in and of itself, a unique and distinctive design, the INVERTED FLEUR-DE-LIS DESIGN Trademark has, through extensive sales, promotion and media coverage of ROCK REVIVAL jeanswear on which it appears, come to identify RCRV as the exclusive source of such products.  As a result of RCRV's broad media exposure, and the uninterrupted and continuing promotion and sale of ROCK REVIVAL jeanswear bearing the INVERTED FLEUR-DE-LIS DESIGN Trademark, the design has acquired distinctiveness, and has developed a strong secondary meaning among consumers and the trade, immediately identifying RCRV as the exclusive source of products bearing the INVERTED FLEUR-DE-LIS DESIGN Trademark.  As a result, consumers familiar with RCRV's products have come to recognize the INVERTED FLEUR-DE-LIS DESIGN as RCRV's "signature" and/or "trademark."

RCRV further states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, it has produced documents sufficient to demonstrate that the INVERTED FLEUR-DE-LIS DESIGN Trademark serves as an indicator of source for RCRV's products, including, without limitation, the following:

i   USPTO file wrapper for U.S. Trademark Reg. No. 4,248,371 (RCRV000018-202);

i   Style-by-style Sales Reports (2009 (RCRV004694-4698); 2010 (RCRV004699-4709); 2011 (RCRV004710-4716); 2012 (RCRV005563-6333); 2013 (RCRV006334-7693); 2014 (RCRV007694-9036); 2015 (RCRV009037-10908));

i   Line Sheets (2006 - present) (RCRV002616-3616);

i   Design documents and sketches (RCRV004631-4693);

i   Product listings from RCRV's ecommerce site (RCRV003617-3686; RCRV003976-4313), amazon.com (RCRV003687-3743), Macy's ecommerce site (RCRV003744-3747), The Buckle's ecommerce site (RCRV003748-3799), Revolve (RCRV003800-3810), Nordstrom's ecommerce site (RCRV003811-3829);

i   Printouts from RCRV's website (RCRV0003830-3834);

i   List of retail stores that sell RCRV's products (RCRV003835-3857);

i   Various Social Media (Facebook, Instagram, YouTube, etc.) (RCRV003858-3975; RCRV004492-4518; RCRV004564-4573; RCRV010909-10975);

1

2

3

4

5

6

7

8

9

i   Photographs of the trademark notice appearing on the
    hangtag and interior sewn tag of RCRV jeans
    (RCRV004314-4315);

i   Unsolicited media coverage (RCRV004316-4451;
    RCRV004519-4564);

i   Advertising and promotional materials (RCRV004452-
    4491; RCRV004574-4630);

i   Advertising and promotional spend (RCRV004720-
    4729); and

i   Enforcement documents (*i.e.*, cease and desist letters,
    operative pleadings, judgments, consent judgments
    and/or injunctions and dismissals) (RCRV000203-
    2615).

10

Salzmann Decl. ¶88, Ex. M.

11

12

13

14

15

        The foregoing supplemental response to Interrogatory No. 6, which sets forth
that which was already apparent to Defendants' counsel from RCRV's production of
documents pursuant to FRCP 33(d), eliminates any dispute as to the sufficiency of
RCRV's response to Interrogatory No. 6.  Accordingly, the Court should deny any and
all requested relief with respect to Interrogatory No. 6.

16

17

**IX.   RCRV'S FAILURE TO PROVIDE VERIFIED RESPONSES**
**DEFENDANTS' CONTENTIONS RE VERIFICATION:**

18

19

20

21

22

23

        Additionally, RCRV has failed to provide verification for its responses to
Defendants' First Set of Special Interrogatories.  Fed. R. Civ. P. 33(b)(1)(5) states, "A
corporation or other entity ***must*** designate someone to sign and execute an oath on its
behalf."  At this point, five months after being served with Defendants' Special
Interrogatories and three months after serving its responses to same, there is no good
faith reason as to why RCRV has failed to provide verification of these responses.

24

**RCRV CONTENTIONS RE VERIFICATION:**

25

26

27

28

        Defendants' contention that "RCRV has failed to provide [*sic*] verification for
its responses to Defendants' First Set of Special Interrogatories" is another falsity.  As
RCRV's counsel reminded Defendants' counsel by letter dated May 12, 2017, RCRV
served its objections and responses to Defendants' interrogatories on Friday, February

1   10, 2017, and served a verification from Lilly Kim on the following Monday, February

2   13, 2017.  Salzmann Decl. ¶90, Ex. N.

3          Presumably, it is for this very reason that neither Defendants' counsel's

4   February 23, 2017 Local Rule 37-1 letter (Covington Decl. Ex. 5), nor Defendants'

5   counsel's March 8, 2017 letter (Covington Decl. Ex. 6) purporting to "follow-up" on

6   "the parties' March 3, 2017 L.R. 37-1 meeting regarding the discovery issues raised by

7   Defendants," so much as mention RCRV's alleged failure to provide a verification of

8   its interrogatory responses.  Nor did Defendants' counsel raise this alleged deficiency

9   during the March 3, 2017 meet and confer.  Had Defendants' counsel done so,

10  RCRV's counsel would have corrected Defendants' counsel's "misunderstanding" at

11  that time.  Salzmann Decl. ¶91.

12         Further, given Defendants' failure to raise this during the meet and confer

13  process, as expressly required by Local Rule 37-1 ("[t]he moving party's letter shall

14  identify each issue and/or discovery request in dispute"), it is improper for this non-

15  issue to have been included in the joint stipulation.

16

17  DATED:     May 16, 2017          BLAKELY LAW GROUP

18

19                                  By:   /s/ Jessica C. Covington
20                                        Brent H. Blakely
                                          Jessica C. Covington
21                                        *Attorneys for*
                                          *Defendants/Counterclaimants*
22                                        *Affliction Holdings, LLC*
                                          *and Xtreme Couture, Inc.*

23  DATED:     May 16, 2017          ARNOLD & PORTER KAYE SCHOLER LLP
24

25                                  By:    /s/ Matthew T. Salzmann
26                                        John C. Ulin
                                          Eric D. Mason
27                                        Louis Ederer
                                          Matthew T. Salzmann
28                                        *Attorneys for Plaintiff RCRV, Inc.*
                                          *d/b/a Rock Revival*